ROANE, Judge.
The bill of exceptions speaks of another letter.
Wickham. But no such is in the record.
Warden. The Clerk has made a memorandum, that it was read. '
Wickham. It must still be argued, as if no such letter existed, because it is not made part of the record. The promise was to do equal justice; and what was equal justice? Suppose one of his daughters was more needy than the others, then equal justice would consist in bestowing a larger portion on her, because the others could do with less. But, it is not only uncertain as to the sum, it is indefinite as to the kind of provision also; the promise is not to give lands, slaves, or money specifically; and if it had, it might have been given to the daughter and her children, in exclusion of the husband. The time too is uncertain; it is, as fast as convenient; but fathers generally provide for their daughters by will, which is considered as the most convenient period by them; yet, it cannot be referred to that more than to any other period, and therefore, is altogether uncertain as to time. The letters were written evidence; on *81 which the party had a right to aslc the opinion of the Court, * and, therefore, the decision should be on the papers themselves, which do not disclose a sufficient cause of action.
There ought to have been an averment of gifts, to the other daughters, and convenience to Chichester, without which the plaintiff could not recover: For, they constituted the very gist of the action. Suppose, the declaration had stated a provision for one daughter, and that it was convenient for the father to bestow the same on this daughter, if the defendant chose to plead the act of limitations, he must not say generally, that he did not assume within five years, but that the action accrued more than five years past; which proves, that the happening of those events is thegisi of the action, and not the promise ; and therefore, those events should have been stated to have actually happened. The breach is relied upon by the counsel for the appellee; which is no more than the common breach in every declaration of indebitatus assumpsit, and if sufficient to support the present declaration, the plaintiff will he entitled to judgment in every case which can be conceived, although he shall have left out the whole gist of his cause. If there be an action on a covenant for doing divers things, some positively, and others on the happening of certain events, and there is a general breach laid of non-performance of the covenants, it would be bad for the want of certainty. But, it is said, that the verdict cures the defect, and the act of Jeofails was relied upon. That statute, though, did not change the law in this respect, and there was a case in this Court upon that subject. If, Mr. Warden is correct, then the plaintiff could never fail. upon a general verdict; for, the statute clearly cures form, and according to him, title too ; and therefore, there could be no failure after verdict.
*82 Tlie case in 2 Dougl. 679, proves, that this act only affirms the common law; for, the rule laid down there is precisely like the act of Assembly: And in that case, the Court determined that the defect was not cured. The statute, indeed, aids the omission of the averment of a fact which must necessarily have been proved, in order to have entitled the plaintiff to a verdict; but what fact was necessarily proven in this case, is not apparent. The promise here was only an inducement to the fact, which was the happening of the event, and therefore, the fact itself is entirely omitted. In trover, the finding is only inducement and the conversion the gist; but, if the conversion be entirely omitted, then, most clearly the plaintiff cannot have judgment, though the verdict be for him. In every ease the gist of the action must be laid, or else the party might recover without a declaration altogether ; for, if he can leave out the gist, he certainly may the formal parts, that is, the Court may dispense-with a declaration altogether. The reason for requiring a precise statement is, to give the defendant an opportunity of defending himself; but in this case, the defendant could not tell how to defend himself: for, no particular fact is stated, which he might come prepared to contend against. So, that he was liable to surprise and unexpected charges at the trial. Another reason why the law requires precision is, that there may be a final bar to the claim; but, this case would not afford such a bar, and a new suit would still lie : for, he could not prove by the record a prior recovery for the same advancement, which was set up in this case. The cases cited by Mr. Washington are perfectly apposite, and indeed stronger than this. For, in some, of them the subsequent circumstances were attempted to be stated; but, because defectively done, it did not prevail. 7 Bac. Abr. 42, was so ; and thus Mr. Warden’s doctrine leads to this, that it will be better to omit them altogether than to state some. In [Bertie v. Pickering et ux.] 4 Burr. 2455, there is a more modern case than some of those cited by Mr. Washington; but to the same effect; which proves that the doctrine has been uniform upon the subject. All the cases, therefore, where verdicts have been held to cure the defect in statement, have been, where there was a certain definite fact, necessarily to be inferred, from those set forth, and which consequently must have been inevitably proved upon the trial of the cause. If, the doctrine contended for upon the other side should prevail, then the defendant will not only be lia *83 ble to surprise, or to be twice sued for the same thing, but defective declarations will be drawn on purpose, in order to deceive the défendant, and let in multifarious and uncertain evidence upon the trial of the cause.
Randolph, on the same side. The act of Assembly only meant to adopt the British statute upon the subject of amendment and Jeofails, and a contrary construction leads to absurdity. The promise here was not in consequence of any communication from Vass on the subject of fortune; and therefore, was not bottomed on the marriage, which was no inducement to it. Although, in most instances, the term convenient is convertible with the term reasonable, it would in this be perfect nonsense. How can the Court and jury decide upon the convenience of any man ? If he has thousands in possession, he may owe tens of thousands. It would, therefore, require an inventory of his estate to be exhibited. Chichester does not bind himself to do any thing positively; but merely, that he will “ endeavour” to do it. At all events, he had his whole life-time to perform the promise. The bill of exceptions states, that the Court were requested to instruct the jury, that the evidence did not support the declaration : which the Court should have done, as it was written evidence. Macbeath v. Haldimand, 1 T. R. 173.

Warden.

The case in Burr, does not apply; the goods there were not specified; but in our case, the whole promise is first stated in all its parts, and then a general breach of that promise is alledged. Of course, the events must have heen proved, or the promise could not have been broken. When, therefore, the verdict finds that the promise was broken, it essentially finds that the events had happened; because the promise could not be broken, unless the events had happened. It is a case, therefore, expressly within the words of the Act of Assembly. If the defendant thought the evidence did not support the declaration, he should have demurred; the only question on the bill of exceptions is, whether the evidence was properly admitted ? And it clearly was, because not inconsistent with the declaration.
*84 ROANE, Judge.
At the former argument of this cause, as we-9 as now, I felt a strong disposition to get over the objection of a want of a sufficient averment in the declaration; but am now satisfied, that we cannot do'so, and that great inconveniences would result from supporting such a declaration as the present.
Under our act of Jeofails, according to the principles of construction adopted by the Courts of law in England, a verdict will cure ambiguities, but it will' not cure a declaration where the gist of the action is omitted; for, no proof at the trial can make good a declaration, which contains no ground of action upon the face of it. This is the distinction laid down in the case of Rushton v. Aspinall, Dougl. 679; and upon this distinction, this Court went in the case of Winston v. Francisco, 2 Wash. 187. .
If such an omission as that could be tolerated, the very end and design of pleadings would be frustrated; and a writ of error could never be supported in any case after verdict.
The promise stated in the declaration, of itself, gave to the plaintiff no cause of action; it was only a foundation whereon a cause of action was to arise on some future event, viz: in the event of the defendant’s making advancements to his other daughters, which he did n.ot equally make to the plaintiff. Till that event happened, the cause of action could not be said to accrue; the promise, itself, was merely inchoate. So, that non assumpsit, within five years, would not have been proper, but actio non accrevit. Gould v. Johnson, 2 Salk. 422. This is supposed to be decisive, that the right of the plaintiff was not. complete at the time of the promise.
The happening of that event, then, was an essential link in constituting the plaintiff’s right; it was the consummation of it; and the question is, whether a direct averment of .this, the very gist of the action, was not necessary ?
In Rushton v. Aspinall, upon a general verdict, the judgment was reversed in an action against the endorser of a bill of exchange, because the declaration did not alledge a demand on the acceptor, and his refusal; and because it did not state, that notice of that refusal had been given to the endorser. But these circumstances, although forming a part of the plaintiff’s title, are certainly not a more essential part of it, than the circumstances supposed necessary, to .be set out in the declaration before the Court.
But, theft, it is said, 1st, thát.the general breach, stated in this declaration, amounts to a sufficient averment, that *85 the defendant had not done equal justice to the wife of the plaintiff; 2d, that at least it is good under our act;, for, without proof of that fact, the jury could not have found the present verdict.
__
As to the first, I answer, that a breach only refers to the title stated in the declaration; and that, as it is not the province of the assignment of breaches to set out the right, but to alledge a violation of it, such an assignment, though general, cannot better the case stated in the declaration.
As to the second, although without such evidence, the jury could not have found such a verdict, yet that will not mend the matter, when, as-before stated, the declaration does not in itself contain a sufficient cause of action.
But, if the general breach should be deemed equivalent to a general averment, I am inclined to think that such general averment is insufficient.
It is the very end and principal use of pleadings, that the charge and defence of the plaintiff and defendant, respectively, should be set out and particularized, so as that the opposite party may know the very ground of discussion between them, and be prepared accordingly; and that thereby, the very point in dispute being apparent on the record, all future litigation, for the same cause, may be prevented.
Those reasons have deservedly great weight; and this Court was under the influence of them in deciding the case of Overton et ux. v. Hudson, in April, 1796, 2 Wash. [172;] in which it was determined, that a general indebitatus assumpsit would not lie against a sheriff, for money illegally received by his deputy; but, that where he is to be charged for the act of his deputy, the act should be set out in the declaration.
In the present case, to shew in a very strong light the necessity of a particular averment, the plaintiff might have recovered on account of a supposed advancement to another daughter, when if the defendant could have known from the declaration, that that advancement could be relied on as the ground of action, he might have been prepared with testimony to have shewn it to have been a bona fide sale for a valuable consideration.
For these reasons, I think the declaration insufficient.
There are several other points in the cause, which have been very ably argued, both on the present and former occasion; but, it is unnecessary for me to go into them, as the declaration is in itself insufficient; and upon that, I *86 think the judgment of the District Court ought to be reversed-
CARRINGTON, Judge.
I am of the same opinion. The declaration contains two counts, but they are in effect the same. In both, it charges a general breach, without averring that he had given any thing to his other daughters, or that it was convenient to make an advancement to this one. But, it was evidently important, at least, to have averred a prior gift to the other daughters, and that it was convenient to make an advancement to the plaintiff’s wife; because, they were part of the very gist of the action, as the letter only contained a promise of equal justice with his other daughters, when it should be convenient to him. So, that not only form, but substantial justice required, that it should be investigated, whether there had been prior gifts to the other daughters, and whether it was convenient to malee an immediate advancement to this. But, if they were not stated in the declaration, then it was not made necessary to investigate them; and, therefore, essential points in the cause were never put in issue. So, that there is no room for the presumption, that all matters requisite to support the action were proved upon the trial; for, the declaration did not make it necessary to prove the prior gifts, or the convenience of a present advancement; although, upon no construction, could the plaintiff possibly be entitled without. I am not inclined to be over-rigorous in things of this kind; but, some degree of certainty is necessary; and the act of Assembly could never have been intended to cure such radical defects as exist in the present case. Otherwise, all would be uncertain; the defendant would be constantly liable to surprise, and the very end of pleading would be frustrated.
It is the business of the plaintiff to consider what facts will support his action before he brings it; and then to set them forth in such a manner, as that the Court may see, a cause of action has accrued. But, this has not been done in the present instance; and, therefore, I think the judgment must be reversed.
LYONS, Judge.
At common law, he who would recover against another, was obliged to shew the cause of action explicitly in his declaration; in order that the defendant might know how to defend the suit, and plead the judgment in bar to another action for the same thing. Regu *87 larly, there must be an affirmative and a negative to make an issue; and a party is not bound to prove what he does not aver, as it is not included in the issue. The plaintiff, therefore, must aver all material facts, in order that the jury may inquire into them. [Callonel v. Briggs,] 1 Salk. 112. A condition precedent must be averred, in order that the Court may decide whether the cause of action has accrued. The promise, here, was to give as much to this, as to the rest of his daughters; when convenient to him. To entitle the plaintiff, therefore, to an action for the breach of this promise, he should, at least, have stated, that the defendant had given something to the rest of his daughters, and that it was convenient for him to make an advancement to the plaintiff; for, those were essential grounds of the action, and in the nature of conditions precedent. They, therefore, ought to have been averred; and the want of it was such a defect, as the verdict will not cure, according to the cases which have been cited;' especially those from Dougl. and 1 T. R., which clearly shew, that nothing is to be presumed, but what must have been necessarily proved upon the averments contained in the declaration. But, as there is no averment of the facts necessary to support the action in the present case, there was no necessity for proving them upon the trial; and, therefore, no presumption, that such proof was offered, can be made.
It was insisted, though, that our own act of Jeofails cured the defect; and, perhaps, at first sight, there does appear some color for the assertion.. But, such a construction would introduce innumerable inconveniences. It would destroy all certainty, tend to surprise the defendant, and put it out of his power to plead the first judgment in bar to a subsequent action.
This proves the danger of introducing positive rules of practice into a statute: which, generally speaking, is not susceptible of the same modifications and exceptions, according to the exigency of the case, as the common law admits of. But, there are rules for construing statutes; and one is, that the best construction of the statute is, to construe it as near to the reason of the common law as may be, and by the course which that observes in cases of its own. But, we have already seen, that the reason and policy of the common law required an explicit statement of the plaintiff’s case in his declaration, in order that there might be a complete investigation of the merits of the question, and that the defendant might not be taken *88 by surprise. Construing this act, therefore, according to ^ e spirit of that doctrine, it will follow, that a verdict will in no case cure an omission to state a principal ground of the action, or an essential part of the plaintiff’s title. Because, in such a case, there would be no occasion for the' plaintiff to prove what he had not averred, and the defendant could not foresee a charge which was not contained in the declaration. Both which, were required by the common law: and, then, construing the statute as near to that as may be, it results that it is still necessary for the plaintiff, in his declaration, to aver the essential grounds of his action, of the verdict will not aid the defect.
It is said, that it need not be averred, that it was convenient; for, it was to be done in a reasonable time. In cases of forfeiture, the party is generally to be allowed his life-time to perform the condition; and in agreements, the intention of the parties is principally to be attended to. This promise left it to the father’s own will and pleasure when he would make provision; for, he says he will do it, when it is convenient to him ; that is, whenever his affairs would permit, without subjecting himself to distress and difficulty. But of that, he was to be the judge. This was clearly the intention of the writer throughout the whole letter ; and as he was to be the giver, he might dispose of it upon what terms he pleased. He may be taken to have said, I will do her equal justice in the end ; that is, as soon as I think my affairs will admit of it; for, it is not to be' supposed, that he meant to be sued on each gift, but the time of doing it was to be left to himself; and he did not mean that Vass should have it in his power to bring an action against him, the moment it was understood that he had made an advancement to any other of his daughters. However, I decide nothing with regard to the merits, but shall be perfectly open to an argument on them, if the case should ever occur ¿gain. At present I think the declaration clearly bad; and; therefore, that the judgment should be reversed.'
PENDLETON, President.
I doubt, whether the plaintiff can maintain the action alone without joining his wife, since, though the promise was made to him, it would seem to import a donation to the daughter, which in its nature would admit of performance by a grant of lands to herself, and fixing the inheritance in her. If it were considered though, merely as a promise of a personalty, that right *89 would vest as a joint interest in husband and wife until reduced into possession, and go to the survivor, if either died before that happened. On that ground, therefore, I am rather inclined to think thé wife ought to have been joined, but do not decide upon it, as unnecessary at present.
I think the letter of April 12th, 1789, from the defendant to the plaintiff, proves the promise as laid in the declaration, and that the District Court were right in giving that direction to the jury ; but, if I had doubted, I would have presumed, that the letter missing afforded additional weight of evidence. I think, however, that the Court erred in the opinion, that the declaration was sufficient to maintain the action.
The promise, as laid, does not, upon the marriage, give a right to the action, but other things are to happen to entitle the plaintiff, which may be considered as the gist of the action, and ought to have been averred.; as, that the defendant had given to another daughter such a sum ; for, on that, his right of action accrued upon the promise to do equal justice to his daughters: He should also have alledged, at least, that it was convenient to the defendant to pay, if he was not, in the promise, made the judge of that convenience: Neither of which is averred.
But, it is said, that this is supplied by the breach ; and if that had stated, that the defendant, although he had given such a sum to another daughter, and been required to give a like sum to the plaintiff, had refused so to do, I would, especially after verdict, have considered it as a sufficient averment, though not put in the usual place or form.
But, the breach has not a word about it, and only says in general, that the defendant had broken his promise, without shewing how, so as to be defective in itself, instead of curing the omission in the want of an averment.
I concur in thinking this defect not cured by the verdict under the act of Assembly, presuming proof to have been given of facts imperfectly* laid in the declaration, but not such as are not laid at all.
I am not fond of these exceptions, but every declaration ought to be drawn so as to answer two essential purposes; 1st. to convey sufficient notice to the defendant, upon what points he is to defend himself; 2d* to enable the defendant, if cast, to plead that recovery in bar to another action, for *90 the same thing.* Neither of which are answered by the present declaration. The inuendo what the promise meant, namely, that when he gave a cow or a bed to one daughter, he was to have it valued, and give immediately as much to each of the others, does not accord with my idea of the promise: he did not mean to subject himself to so much trouble and to so many suits.
The time was fixed for his doing them equal justice.
It was left to his convenience, of which he was the judge; and he had all his life-time to perform it in. When making his will, he might review his whole donations, and provide for any inequality among the daughters, in- ■ eluding a recompense to those who had not been advanced equal to others, in point of time as well as value: for this event,'the plaintiff sh'ould have waited and not brought his action too soon.
The judgment of the District Court must therefore be reversed, †

[* In Macbeath v. Haldimand, Willes, J. said, “The construction of deeds is a matter of law, but that of letters is proper for the consideration of the jury.” Burrer, J. “ I do not agree with my brother Wittes, as to the construction of letters. If they he written in so dubious a manner, as to be capable of different constructions, and can he explained by other transactions, the whole evidence must he left to the jury to decide upon 5 for they are to judge of the truth or falsehood of * such collateral facts, which may vary the sense of the letters themselves 5 hut, if they he not explained by any other circumstances, then, like deeds or other written agreements, the construction of them, is a mere matter of law.” 1 T. R. 181, 182.
“ No principle is more clearly settled, than that the construction of a written evidence is exclusively with the Court.” Marshall, C. J. delivering the Opinion of Court in Levy v. Gadsby, 3 Cranch, 186; and see Herbert et ux. v. Wise, et al. 3 Call. 239.]

[* Fulgham v. Lightfoot, Post. 250.]

[*Leftwitch et ux. v. Stovall et al. 1 Wash. 305-6; Brooks v. Scott's exr. 2 Munf. 344, 347.]

[† After this decision, Vass instituted a suit in Chancery against the representatives of Chichester, and obtained a decree on the merits. See Chichester's exr. v. Vass's admr. 1 Munf. 98.]