[JUDGE ROANE.
There was some difference of opinion on the point, whether the quod cum would be fatal after verdict. In the case of Hord v. Dishman, there was a general demurrer filed by the plaintiff to the defendant’s plea.]
Randolph. There can no difference on this point, between a general demurrer and a verdict. So much dignity is attributed to a verdict, only from the presumption that the Jury have drawn all the necessary inferences from 0the evidence.
*Eriday, October 28. The Judges delivered their opinions.
JUDGE TUCKER.
Several exceptions were taken to the declaration, by the counsel for the appellants.
1. That an action of trespass does not lie against a High Sheriff for the act of his deputy, as such.-
If I had ever entertained any doubt upon this point, the case of Saunderson v. Baker, (n) and the decision of the Court in James v. M’Cubbin,(o) must have removed it. The law looks upon the Sheriff and his officers as one person: he is to look to his officers that they do their duty; for if they transgress, he is answerable to the party injured by such transgression; and his officers are answerable over to him. (p)
Administrators, as such, may, by possi *613 bility, have a close, under our act of 1792. (a) but I consider that part of the declaration merely as an inducement to the trespass in taking- the slaves. Were it otherwise, the -Court, after verdict, would intend that the administrators were in possession of their intestate’s plantation and slaves, under that -act.
The blank in the declaration, and the different modes of spelling one of the negroes’ names, in the declaration and in the demurrer to evidence, are of no importance. The Court ought to understand the evidence, as a Jury would in such a case.
As this case was decided entirely upon the merits of the case stated in the demurrer to evidence, in the District Court, I -shall notice them.
It was an action of trespass, for that one G. B. Grasty, a deputy of the defendant, under colour of an execution against the «state of Zachariah Burnley, entered the -close of the plaintiffs and took and carried away from them certain negroes. Plea, not guilty. A demurrer to the evidence was filed in the cause, which stated, that in December, 179S, Thomas Bell, testator of the plaintiffs, intermarried with Sally Burnley, daughter of Zachariah Burnley. That, immediately after the marriage,the said Burnley '"'sent the slaves in question to the said Thomas Bell. That they remained in Bell’s possession till his death in April, 1798, a few days before which his wife died. That, on the 23d -of May, thereafter, an execution issued from the office of the District Court of Fredericksburg, at the instance of John Allen, against the said Zachariah Burnley, founded on a judgment obtained at April Court, 179S, which execution was levied on the said slaves. That the sale thereof was forbidden by the plaintiffs, in whose possession they were and had been from the death of Thomas Bell. That, at the time of the marriage between Bell and Sally Burnley, Zachariah Burnley, her father, was possessed of a large fortune, consisting of fifty-odd slaves, &c.
There is some other loose testimony stated respecting the provision which Burnley had made for other daughters, when they were married, and the nature of that provision, whether absolute, or only by way of loan. Zachariah Burnley died in May, Í800.
It appears to me that the delivery of the negroes to Bell immediately after the marriage, may well be presumed to have been made in consideration of the marriage; and, the possession having remained with Bell from that time till his death, no presumption of fraud arises upon that transaction. And, as the demurrer to evidence admits that Burnley, at the time of the marriage, had a large fortune in possession, that circumstance is sufficient to rebut any presumption of fraud arising from the obtaining a judgment in the District Court. That judgment does not appear to have been followed by an execution against Burnley’s ■estate, at any time before the marriage, nor at any time after, within the year. The personal chattels of Burnley were not bound thereby, unless an execution was ■actually taken out and delivered to the Sheriff. There being no legal lien upon the .slaves in consequence of the judgment, there could be no legal impediment to a fair disposal of them: the provision made for his daughter does not seem exorbitant; it must be considered then as a fair disposition of the negroes to her. *And being so, the property therein could not be subject to an execution sued out more than three years after the judgment. By what means the right of suing out the execution at that time was kept alive, or whether it was kept alive, does not appear; nor can the Court presume any thing about it, except that, if an execution had been taken out, and delivered to the sheriff before the marriage, so as to have bound the property of the slaves as the property of Burn-ley, it is not probable that so important a fact would have been omitted upon the trial of this cause. I continue of the same opinion as formerly upon this point of the case.
It was, however, noticed at the bar, though not by the leading counsel for the appellant, that this declaration, like that in Hord v. Dishman, a few days past, begins with a whereas, although the action is in trespass. This, we have decided, was an incurable defect upon a general demurrer. The inclination of my mind, then, was to hope that it might be aided by our statute of jeofails after a verdict. But, I am reluctantly compelled to abandon that hope. After an attentive consideration of the principles settled in this Court, in the cases of Winston v. Francisco, (b) Chichester v. Vass, (c) and Cooke v. Simms, (d) lam convinced we cannot sustain- this declaration. In every action at common law, there must be an affirmative and a negative, to make an issue. Here there is no affirmative; the whole declaration is mere recital; leading to an affirmative, but not containing one. And, though the statute of jeo-fails will aid many omissions after a verdict, it will not cure the defect in a declaration, in which the very gist of the action, is omitted to be charged.
It is much to be lamented that the inattention of gentlemen of the profession to their pleadings should so frequently defeat the substantial justice of their clients’ causes; as many late decisions in this Court prove. The publication of them it is to be hoped will operate as a warning to them in future, not to sacrifice their clients’ interests, by a degree of negligence, inattention, or want of skill, which it is difficult to excuse.
*'In the present case, I feel myself mortified to decide against the real merits of the case; but, for the reasons which I have already alleged, I am compelled to say that the judgment of the District Court must be reversed for this fault in the declaration, and judgment rendered for the defendant, the appellant.
JUDGE ROANE
said, he did not know that he should differ with the Judge, who had preceded him, on the merits of the case; he believed he should concur. But having delivered his opinion, in full, in two former *614 cases, (1) and declared that such a declaration as this could not be supported, he did not deem it necessary to consider the other points in the cause.
JUDGE FLEMING
observed, that it was much to be regretted that so good a cause as this, should be lost by defective pleadings. But, on the authority of cases decided both in England and in this country, particularly one during the present term, (2) the Court felt constrained to decide, that the judgment must be reversed.

 3 Wils. 309, 2 W. Blacks. 832, S. G.

 2 Call, 273.

 Per Black, J., in 3 Wils. 317, 2 W. Black. Rep. 834. See also Doug. 40; Cowp. 403, Cameron et al. v. Reynolds.

 Rev. Code, vol. 1, c. 92, s. 40, p. 106.

0>) 2 Wash. 187.

 1 Call, 83.

tl) 3 Call, 39.

 Ballard v. Leavell, M. S. and Hord v. Dishman, ante, vol. 2, p. 595.

 Hord v. Dishman.