Bevins brought an action on the ease, in the Rutherford County Court, against Kelton for a malicious prosecution. The declaration contained three counts. The first charged Kelton with falsely and maliciously and without probable cause, causing the said Bevins, together with one Moore and Scroop, to be indicted for stealing a certain steer-hide, upon which indictment the count stated the said Bevins had been acquitted and discharged, without setting forth how he was acquitted. The second count stated that Kelton had indicted the said Bevins, together with the said Moore and Scroop, maliciously and without probable cause; upon which last-mentioned indictment the said Bevins was acquitted and discharged by the verdict of a jury and the judgment of the Court. The third count charged the said Kelton with falsely and maliciously imposing the crime of felony upon the said Bevins.
The two first counts also stated that the said Kelton carried on the prosecution falsely and maliciously, but did not state that it was carried on withuot probable cause, although so commenced.
To this action Kelton pleaded not guilty, with leave to give the special matter in evidence. And upon the trial in the County Court a verdict was rendered in favor of Bevins for $260. A new trial was moved for and obtained by Kelton; and upon the second trial a verdict was rendered for the same sum. An appeal was then taken to the Circuit Court, in which a verdict was rendered in favor of Bevins for $350. Kelton then moved for another new trial, which was overruled by the Court to which opinion a bill of exceptions was filed by Kelton, setting forth the whole of the evidence.
A number of witnesses were examined, not only to prove malice on the part of Kelton, but to show the existence and absence of probable cause. It appeared in evidence that Bevins and some others were *Page 91 
passing along a road, not far from Kelton's fence, where one of Kelton's steers was found dead. Bevins and Moore skinned it, and took the hide home, making public proclamations that they had done so, in order, as they said, that the owner might be enabled to get it. Sometime after this, Kelton, having heard of the circumstance, went to Bevin's house and demanded the hid. Bevins said that he did not know he had any hide belonging to Kelton, that, at all events, he had none in his mark. Kelton then told him that he knew his mark, and that the steer which he had sometime before skinned belonged to him. Bevins replied that the hide he alluded to was at the bottom of the vat, which he then produced, as one of the witnesses states, with considerable reluctance.
All the witnesses proved that sometime before this circumstance happened, Kelton was very anxious to drive Bevins out of the neighborhood, alleging that Bevins was a stranger, and poor, and that no man who did not own land ought to be permitted to live there. It did not appear that Kelton's animosity towards Bevins had ever abated, but one or two witnesses proved that at the time the prosecution was commenced Kelton exhibited considerable reluctance to prosecute, alleging that he was sorry for the situation of the woman and children; and it also appeared that two of the neighbors told Kelton that if he did not prosecute Bevins, they would prosecute him. Some witnesses also swore that, in their opinion, Kelton was actuated by malicious motives. Every witness that was produced proved Bevins to be a man of unimpeachable character.
Bevins also produced in evidence the record of a bill of indictment, which had been preferred by Kelton aganst the said Bevins, Moore and Scroop, which had been found by the Grand Jury a true bill, against Bevins and Moore only. But no objection to this was taken, on the trial of the cause. The record also stated that upon this bill of indictment anolle prosequi had been entered by the solicitor for the county.
Haywood, for the plaintiff in error. The first two counts in the declaration are bad, for want of the necessary *Page 92 
averments. They both state that the prosecution was commenced, maliciously and without probable cause; but it is averred that it was carried on maliciously only. It is very possible that a prosecution may be commenced from impure motives, and still be carried on afterwards, if there be in fact probable cause, to answer the ends of justice alone. But a still more prominent objection is that the declaration and the evidence produced do not correspond. Bevins alleges that the indictment was found at the instigation of Kelton, against Bevins, Moore, and Scroop. It seems indeed that a bill of indictment was preferred against these three, but only found against two of them, so that in fact Bevins and Moore were the only persons indicted. It is a general principle in the law that the allegation and the proof must correspond. It may happen that where the proof is entirely oral a substantial correspondence will be sufficient. But where the proof is written, the plaintiff must prove his case expressly as laid. In an action for a malicious prosecution, where the declaration states that the trial was had on one day, and the record produced shows it to have been on a different day, the plaintiff must be non-suited, because it does not appear that it is the same record attempted to be described in the declaration. 2 Peake's Ev. 196. In all actions for a malicious prosecution the facts should be proved exactly as laid in the declaration, and where any part of the record of the prosecution is attempted to be described or alluded to, the evidence upon the trial of the suit, founded upon such record, should correspond, in all its parts, with the statements made by the plaintiff in his declaration. 4 T. R. 590; 6 Com. Dig. 173. And the reason for this is obvious. Unless the Court compel the plaintiff to apprise the defendant, in the declaration, of the nature of the action he has commenced, and also to set forth truly the grounds upon which it is founded, the defendant might be made twice liable for only one cause of action. If Bevins were to bring another suit against Kelton, and set forth in the declaration the real truth of the case, as it would appear from the record, how *Page 93 
could Kelton plead the verdict and judgment in this case in bar? For anything that could appear to the Court, the two actions would not appear to be for the same cause, and thus Kelton would suffer in fact for the very offence for which he had been already punished. To prevent the possibility of such oppression, the law had wisely made the provisions before stated. Bevins can not complain of the operation of this rule, because he was in possession of the record, and ought to have set it out correctly. If he has not done so, it is his own fault, and not the fault of Kelton. The record, therefore, which is produced by Bevins being variant from the one described in the first two counts of his declaration, he can not succeed in the present action. 6 T. R. 364; 5 T. R. 493; 2 T. R. 476; 1 T. R. 657; 4 T. R. 500; 2 Wm. Black, Rep. 1104; Doug. 97, 665; 3 T. R. 643; Cow. 229; Salk. 600, 660; 6 Mod. 167; 4 Burr, 2270; 1 Hen. Black, 50; 2 T. R. 366; Cow. 671; Str. 200.
I shall also contend that there is probable cause. It is not necessary for Kelton's justification that there should have been a felony in fact committed. If he had probable cause to suspect a felony his justification is complete. The conduct of Bevins when Kelton applied to him for the hide, his evident embarrassment and prevarication when asked if he had it in his possession, together with the circumstance of the hide's being marked with the letter K, which was Kelton's mark, added to the fact that Bevins lived in the neighborhood and in all probability knew the hide to be Kelton's, were sufficient to create a strong suspicion that the intention of Bevins was to commit a felony. Besides, in this case an indictment has been found against Bevins, and therefore the want of probable cause, unless express malice be proved, will not support the action. Bul. N. P. 14; 2 T. R. 231. In some causes it had been laid down that where an indictment has not been found from the want of probable cause, malice may be inferred; but this principle has never applied to a case where an indictment has been found. Here there is no proof of express malice, beyond what is usual in such cases. It *Page 94 
does not happen in one case out of a hundred that a prosecution is commenced from motives of public good alone. Governments are therefore compelled to resort to the malevolent passions of men in order to bring offenders to justice. Nobody ever heard of a man's prosecuting his friend, nor to justify a prosecution is it at all necessary that the prosecutor and prosecuted should stand in any such relation. Although, then, there be no probable cause, yet, unless the conduct of Kelton is marked by unusual and express malice, he is not liable to this action. It may be also remarked that this is an action not favored in law.
From what appears to this Court Bevins has never been tried, the prosecutor having entered a nolle prosequi. A nolle prosequi does not end the prosecution nor discharge the defendant, and both these must concur before a right of action accrues. Bul. N. P. 14; 2 T. R. 231.
Dickinson, for the defendant. The question is not now how far the objections to the testimony might have availed Kelton if they had been made upon the trial; no objection was, however, made at that time, nor until after a verdict had been found by the jury. It is a writ of error to reverse the judgment upon matter of fact, and not from any opinion given on a point of law. I shall not now inquire now far the record produced corresponds with the declaration, because I think the objection comes too late. A motion for a new trial is not a matter of legal right, but an application to the discretion of the Court, and therefore no exception or writ of error lies to reverse an opinion, either overruling or sustaining a motion for a new trial. 2 Day's Rep. 364. A motion for a new trial is like a motion for a continuance, and it has been settled that in the latter case it is wholly in the discretion of the inferior court. 4 Cranch, 237. The law also has settled that a new trial in a hard action will not be granted, although the verdict in such case was not only against evidence, but also against law. Bul. N. P. 326. Now if an application for a new trial was a legal right, the Court, in such cases, would be bound to grant it, although *Page 95 
the demand or defence were unconscionable, and depended wholly upon a technical point of law. In England, motions for new trials were made to the judge at N. P., but he never decided them. The question was taken at once to the Court of King's Bench, by whom the motion was either overruled or sustained, in their discretion. 3 Black. Com. 372. A practice has, however, latterly prevailed of the judge at N.P. taking cognizance of such motions; and there is not a single instance of a writ of error being prosecuted to reverse the opinion. A bill of exceptions should always be to a single point; it must be to the opinion of the Court delivered on a point of law, either admitting or rejecting testimony offered upon the trial, or failing to give a correct legal opinion when expressly called upon during the course of the trial. The case in 1 Henning Mumford, 551, as to granting a new trial, is a case in chancery. There could not be a bill of exceptions in that case, and it will not be doubted but that the Superior Court may reverse the decree of a chancellor let it be given upon what point it may. But even admitting that a writ of error will lie to reverse the opinion of an inferior court, overruling a motion for a new trial, yet the opinion in this case ought not to be reversed. There have been three separate trials, in all of which verdicts have been rendered for Bevins. There is no suggestion that the verdicts were procured by any unfair practices on the part of Bevins; and it is well settled that after there have been three concurring verdicts a Court will not grant a new trial, unless in some extraordinary cases.
Here is no proof of probable cause. Kelton knew, because he had been informed of the facts, that there had been no felony committed. But whether he knew it or not, is perfectly immaterial. Probable cause does not extend to the crime, but to the person. If a felony has been committed by somebody, a person may be innocent, and yet there may exist probable cause to suspect him. In such case the prosecutor will be justifiable in commencing a prosecution. But if there has not been a felony committed, *Page 96 
there can not be probable cause to suspect anybody for that which was done by nobody. If a thing be in fact done, circumstances may frequently mislead as to the perpetrator; but if the act complained of not done at all, it would be curious to ascertain how anybody could be reasonably charged with doing it.
Mr. Haywood objects to the declaration, that it does not state the prosecution to have been carried on without probable cause. The declaration states that it was commenced maliciously, and without probable cause; and if it can be shown how a prosecution commenced groundlessly can afterwards be carried on with good faith and with probable cause, I am willing to give up the case. The circumstances which give rise to the prosecution, must of necessity exist before it is commenced. If at that time the person prosecuted had been guilty of no impropriety, the same innocence, of course, will exist at every subsequent stage of the prosecution. If, then, it was commenced without probable cause, it can not be prosecuted otherwise.
Phillips and Haywood, in reply. It is essential to the correct administration of justice, that this Court should have a superintending control over every opinion given by the inferior courts. It happens, in a variety of instances, that the party can no otherwise avail himself of a privilege which he claims than by applying for a new trial. An application for a new trial is made to the sound legal discretion of the judge; there is no arbitrary discretion about it; and he may as well give an erroneous opinion upon such a motion as at any other stage in the cause. Suppose the testimony is illegal, or being legal is insufficient; the party, relying upon the sound sense of the jury, fails to demur to it. Suppose they find against him, can he have no redress? If the judge before whom it is tried refuses to grant a new trial, does he not thereby as much violate the law as if he had overruled a demurrer filed to it? Yet, in the latter case, it is admitted, if he give an erroneous opinion, this Court might reverse it. The superior courts in some of our sister States have, in a great many instances, decided *Page 97 
upon the propriety of overruling or sustaining the motion; in none of which cases have they ever gone upon the principle, that the opinion of the inferior court could not be reversed. They have invariably taken those cases up, upon the principle that an opinion had been given by an inferior judge, which they were called upon to revise. Hardin's Rep. 159, 167, 317, 408, 515, 539, 586; 1 Wash. Rep. 5, 79; Call, 369, 370.
But in this case the objection is not so much made to the finding of the jury as to the conduct of the judge in permitting them to find. Probable cause is matter of law, to be tried by the Court and not by the jury. If then, the judge permitted the jury to decide the point, which he did in this case, it was clearly an error in him, and such a one, as for which the judgment ought to be reversed. 1 Wilson, 233; 1 T. R. 544; 4 Burr, 1971.
It has been contended by Mr. Dickinson that our objections to the record being received as evidence, ought to have been made when it was offered, and that because we did not do this, we tacitly admitted its correspondence with the declaration. To this we reply that no man should suffer by the admission of illegal testimony. The plaintiff in the Court below could not maintain his action without producing such a record as he has described in his declaration; such a record was not produced. Does not this case, therefore, stand upon the same footing, as if no record at all had been produced? If he had produced no record, would the verdict and judgment be correct? And if it would not in such case, neither is it in this. Suppose a deed is produced in court which has not been registered, but still is permitted to be read to the jury, without any objections being made; if the plaintiff's claim depended wholly upon this deed, and the jury found a verdict in his favor, would the Court have any hesitation in saying that, in point of law, the verdict was erroneous? Besides, this Court can look into every part of a record. If a writ of error is prosecuted, or an exception be taken, even to a single point, although *Page 98 
that point be not available, yet the Superior Court may look into the whole record, and reverse for other causes. 3 Call, 455.
This is an action for a malicious prosecution, commenced by the appellee against the appellant.
From the record it appears that the appellant prosecuted the appellee in the County Court of Rutherford, at the July sessions, 1805. for stealing a steer skin. On this indictment the Grand Jury found a true bill. At the October sessions following, the solicitor for the county entered a nolle prosequi, and the appellant was taxed with the costs. At the same term of the County Court, the Grand Jury found another bill of indictment against the appellee for the same cause. This was tried at the January sessions, 1806, and the appellee acquitted. The appellant was again taxed with the costs. The appellee immediately instituted this suit in the same Court, which was tried at the October session, 1806, when a verdict and judgment were found and rendered for the appellee. The appellant appealed to the late Superior Court, where the cause was again tried and the same verdict rendered. Upon motion, the Superior Court granted a new trial.
Upon the establishment of the Circuit Courts, the cause was sent to Rutherford County, where it was again tried, at the April term, 1811, and a similar verdict rendered for the appellee. A motion for a new trial was made and overruled, to which opinion of the Court, overruling a motion for a new trial, the appellant, by his counsel, excepted. In the bill of exceptions, the whole of the evidence is spread upon the record.
Under the circumstances of the case, we are to consider whether the judge of the Circuit Court erred in refusing a new trial. It is not attempted to be shown that the whole of the evidence is not before us, nor are we authorized to presume that it is not. 3 Dal. 419.
On the part of the appellees, it is urged that it is manifest, from the whole of the testimony, no felony *Page 99 
was in fact committed, and that the appellant acted from malice in the prosecution. Besides, it is insisted that this Court ought not to interfere after the trials that have taken place.
The amount of the testimony appears to be this: the appellant found one of his steers dead in the woods near his fence, and going to the place the same day, with a view of taking off the hide, he found the steer already skinned by some persons, and the hide carried away. The ears were left on the head.
Most of the evidence was exhibited on the part of the appellees. It shows that they found the steer dead, and skinned him. The hide was taken to Moore's and hung up with up with the flesh side out. Kelton lived about two miles and a half from Moore. Several of the witnesses were told by the appellees of their having skinned some person's steer, and requested that they would make it known in the neighborhood. The appellant lived at a public place and had a large stock. None of the witnesses ever gave information as requested, to the appellant, nor does it appear, that he had the least intimation who had skinned his steer, and taken the hide away, although he made many inquiries, until several months after it was done. The first intimation which Kelton received of the hide is related in the testimony of Edmond Hodge. He stated that a Mr. Tyler told Kelton, in his presence, that if he would inquire of Moore, he might hear of his hide. The next day Kelton took out a search-warrant, and in company with the officer and Sherwood Harris went to Moore's tan-vat, where they found Moore. Kelton asked him if he had not a hide which was not his own. He replied he had a number of his neighbor's hides to tan, and upon being asked if he had one that belonged to Kelton he answered, if he had, it was not in Kelton's mark. The officer showed the search warrant, and Moore observed that the hide he supposed they alluded to was near the bottom of the vat.
On throwing the hides out of the vat, the brand was visible at some distance; it was a K, and was immediately claimed. Moore stated then that Bevins *Page 100 
had found the steer, and that he and Bevins had skinned it.
From the statement, which is believed to be in substance correct, no doubt can be entertained that there was probable cause for the prosecution. The plaintiff had been clandestinely deprived of his steer-hide. He had industriously inquired, but could not hear of it until the day before the search-warrant was taken out.
The circumstances which took place at the vat, when the hide was found, wore the appearance of suspicion, to say the least of it. Considering, however, that Moore and Bevins made the matter public in the neighborhood, and had requested many persons to do the same, it would seem proper to conclude that they did not take the hide off feloniously. They stand amply and justly acquitted from any such intention by the verdict of acquittal in the prosecution, and the sense of society exhibited in the repeated verdicts against Kelton in this action.
But the inquiry is, not whether Moore and Bevins were innocent of the charge preferred against them in the indictment, but whether Kelton had probable cause for the prosecution he set on foot.
To sustain an action for a malicious prosecution, there must not only be malice, but a want of probable cause. In the absence of either of these requisites the action falls to the ground. Hence the want of probable cause for a prosecution is the test of this action. Though malice exists, if in the estimation of a rational and dispassionate mind there be probable cause for prosecution, the action can not be sustained. With the information that Kelton possessed, he had reasonable ground to believe that a felony had been committed. He ought not, in justice and sound policy, to be mulct in damages and costs for endeavoring to detect and punish such offences.
Moore and Bevins were honorably acquitted. They introduced proof showing their innocence, but this was unknown to the plaintiff. At this stage they ought to have been satisfied; particularly when their own proof shows that Kelton lost his hide, and *Page 101 
that Moore had it in his vat. He showed no willingness to take his hides out, and show them; besides, the ears had not been taken with the hide, as is usual in such cases.
The plaintiff and defendant lived neighbors; the former at a public place; had a large stock; and the steer was skinned near his fence. Nor does it appear that Kelton knew of his hide having been hung up, or that Moore and Bevins had requested some of the neighbors to make it public. There surely was probable cause; and whether Kelton had malice or not will not vary the question as to the propriety of the prosecution.
The public interest is concerned that offences should not go unpunished. It is no test of the impropriety of such prosecutions that defendants are acquitted. The true and legal principle is, had the prosecutor ground to think that a felony had been committed, with the information he possessed at the time of the commencement of the prosecution? If he had, be ought not to be subject to damages in this action.
Our next inquiry is, whether the verdicts which have been given, should bar any further investigation? It is admitted that this is an inquiry of much delicacy and difficulty. Though there have been three trials, yet in legal understanding but one new trial has been allowed; so that the statutory restriction does not apply. Nor has it been insisted on by the defendant's counsel. The subject must then be considered independent of the 6th section of the Act of 1801, limiting the power of the courts in granting new trials, to two. Interest reipublicae ut sit finis litium, is a maxim of much public utility, and ought not lightly to be overlooked. In support of this maxim, it may be justly remarked that great respect is due to the opinions of the different juries, who have given their verdicts in these causes. I should be as unwilling as any man living to invade the province of juries, so carefully guarded by the constitution. To them belong the ascertainment of facts agreeably to the maxims, ad questionem facti non respondent judices, ad questionem legisnon respondent juratores. *Page 102 
After verdict, courts will presume everything consistent with law, to support it.
All imperfect statements of facts in pleadings are cured by verdict. Courts will presume in that stage of an action, sufficient proof having been introduced, though the claim to redress were imperfectly or informally set forth. Many things are good after verdict which would be bad on demurrer. And it may be added that many objections are removed by verdict which, if taken advantage of by demurrer or exception, would produce a different result. Thus, for example, testimony is offered which is illegal or incompetent, but is not excepted to when discovered; this is a complete waiver of its incompetency or illegality on that trial.
On a motion for a new trial, the justice and equity of the case will be considered, and not whether it were proper to exclude testimony not objected to. So it is in this Court, if no exception appears on record to the introduction of improper or incompetent testimony in the Court below, it can not be taken here. The Court presumes it to have been admitted by the assent of the party; and this presumption is conclusive.
A complete view of this part of the law can be had by recurrence to 4 Mass. Rep. 264, 437; Addison's Rep. 118; 7 T. R. 351, 2 Day, 392; 1 Call, 83, 250; 4 Dal. 108, 439; 1 Cra. 71, 336; 1 Hen. Mum. 72.
But the doctrine of presumption has its limits; and its principles are defined as well as other branches of the law. Thus, we can not presume any part of the evidence given in this cause has been omitted or left out. Hardin's Rep. 163, 374; 3 Dal. 419, n.
Though the weight of testimony be on one side, where there is contradictory evidence, courts will presume it correct after verdict, where the preponderance is slight. And, though considerable, the Court will presume, after several verdicts, that the jury, who are the constitutional and proper triers of facts, have correctly found the truth to be on the other side, and will not disturb the question. This is required by the *Page 103 
Constitution, and genius and spirit of our laws. If it were otherwise, courts might render juries useless, and usurp the power of ascertaining facts, which, according to the principles of the Constitution, should belong exclusively to juries in a court of law.
On the other hand, courts can not, consistently with a conscientious discharge of their duties, surrender to juries the exercise of the power intrusted to them. On the admission or establishment of facts, it is their duty exclusively to declare the law. In the language of the maxim, they are to answer to questions of law when matters of fact are not disputed. The law arising on those facts must be-determined by the Court and not the jury. The English books show that courts will continue to grant new trials where juries find contrary to the directions of the judge in matters of law. This is on the principle that facts are indisputable, and the only question is as to the law. See 1 T. R. 171.
It is with this disposition of the law the inquiry is now made. From facts found or established, legal inferences may be drawn, but these interfaces should be consistent with the nature of things. The powers of court and jury in this respect are believed to be the same, and whether such inference be correct, is matter of law.
A careful view of the whole of the evidence has been taken. Had Kelton known Moore and Bevins used exertions to give publicity to the transaction of skinning the steer and taking the hide home, it would seem improper to disturb the verdict. It was incumbent on then to show that Kelton had this knowledge; this they have not done, nor are we authorized to assume it as a fact that Kelton did know of their disposition to make it public. The testimony does not furnish such an inference, but the reverse.
It appears that the appellant and appellees had not been on a friendly footing for some time before the hide was lost. In the language of some of the witnesses, the appellant did not think them good men, and wished them gone from the neighborhood. In *Page 104 
this state of things it is natural to suppose that much communication did not exist between them. There is no proof that Kelton heard that the appellees had skinned the steer, until Tyler told him, in the presence of Hodge, where to look for the hide.
There is no opposition in the testimony exhibited in the cause, on the main point of the action, from which we might infer that the jury, judging of the credibility of witnesses, found a verdict on the principle that Kelton knew of the appellees' open and public conduct with respect to the hide. The reverse is clearly to be inferred.
In ascertaining the law of this case, the Court here must place itself precisely in the same situation of the Circuit Court. 3 Call. 319.
After so many trials, the case should be clear beyond a doubt; otherwise the Court will not interfere. With me the case is clear. There is no dispute as to fact, and nothing but a question of law remains for us to decide. Was there probable cause for this prosecution? This question hath nothing to do with Equity; it involves a purely legal point. It is so peculiarly governed by the policy of the law that the Court of King's Bench, in the case of Cox v. Warrell, held a special plea good, upon demurrer, which disclosed the facts upon which the defendant relied as a justification. Cro. Ja. 193.
Suppose the facts in this case had been specially pleaded, could it be doubted that there was probable cause? It seems to me it could not. The case last alluded to will put this question in a clear point of view.
From the testimony submitted to us in this record, the matter before the jury was entirely a question of law, and this is simply an appeal to the laws of the country, which should be alike meted to all. That the jury erred in their consideration of the law, I have no doubt; and that consequently the Circuit Court erred in overruling the motion for a new trial.