## McCLURE, ET AL. v. COLCLOUGH, ET AL.

1. When a judgment at law is obtained against one who notwithstanding, has an equitable defence, and he sues out a writ of error to reverse the judgment at law, he is not thereby precluded, after its affirmance, from seeking relief in equity.

2. When the attorney of the plaintiff, or an agent, sufficiently authorised, induces a sheriff to omit returning an execution, three days before the proper term, by advising him that it will be sufficient if returned on the first day of the Court;

this will constitute a defence to a rule against the sheriff and his sureties for the neglect to return the execution on the first day of the court.

3. But if the sheriff omits to urge this as a defence, and judgment is rendered against him and his sureties, this is conclusive on them under the statute.

4. In summary proceedings under our statutes which authorise judgments to be rendered against sureties, without notice, when the principal is notified; the sureties are not entitled to litigate the question of liability, except in the name of the principal. The only matters which they can litigate in such cases, is the *factum* of the bond, and its legal sufficiency. The allowance of judgment against them, does not impair their rights otherwise than to cause them to proceed in another forum to ascertain if they exist.

5. When sureties in such a case seek relief in equity, the allegations of the bill must be equally distinct and positive, as are necessary to constitute a good plea of *non est factum*, at law.

6. It is no defence to a bond, that it was signed by some of the obligors " under the expectation, with the full understanding and under assurances from the public officer, authorised to take it, that another person should also execute it as a surety," when it is not shewn that this was made the condition of its delivery. If they understand the bond is to be executed by an agent, it rests with them to examine his authority; and they are not discharged if it is invalid as to other persons, from a defect in the agent's authority.

7. An averment that a sheriff's bond was never received or approved, by the officer appointed for that purpose, is a sufficient allegation to put the obligee upon proof of its acceptance; but it is not necessary that this should appear either by record or by written evidence. It is sufficient to raise a violent, if not a conclusive presumption, that the bond was received by the court, when it is found upon the files without any evidence accompanying it that it has been rejected, and the principal has executed the duties of his office.

WRIT of Error to the Court of Chancery for the ninth district of the Southern Division.

The bill in this case is filed by McClure, Cooper, Brown, Dansby and Campbell, and alleges that Colclough, one of the defendants, at the fall term of the Circuit Court of Pike county, for the year 1837, recovered a judgment against McMahon & Evans, for $4089, on which $893 50-100 was paid the 28th February, 1838.

On the 6th April, of the same year, a *fi. fa.* on this judgment was issued, and placed in the hands of McRae, another defendant to the bill, as sheriff of Barbour county, to be executed. McRae could have returned the execution in sufficient time to avoid any penalty, and on the day, when he by law, ought to have returned it; but, when there was yet sufficient time to have done so, he

called upon an attorney, who, as the bill states, was the agent and attorney of Colclough, and consulted with him on the necessity of returning the execution three days before the court, to which it was returnable. This attorney assured the sheriff, that it was unnecessary, that he himself would attend Pike court, and would take the execution with him, and deliver it to the clerk, on the first day of the term.· The return of no property was written on the execution by this attorney, at the request of the sheriff, and the writ was delivered by him to the clerk, on Monday, the first day of the term.

Colclough, with a full knowledge of these facts, afterwards ruled McRae, for not returning the execution three days before court, and obtained judgment against him, and the complainants McClure, Cooper and Brown, and the defendant Pugh, as his sureties. Neither of the complainants had any notice of the rule, nor did they know that judgment could be rendered against them without personal service. McRae afterwards, in the names of all the defendants to the judgment, prosecuted a writ of error to the Supreme Court, where the judgment was affirmed. After this affirmance, the complainant McClure, sued out another writ of error, under the impression that he had the right to do so, and gave bond with Dansby and Campbell, as sureties, they being wholly ignorant of the previous writ of error. The judgment was again affirmed and rendered also against the sureties. In point of fact, such of the complainants as were made liable as the sureties of McRae, were not legally bound, although McClure, Cooper and Brown, signed a paper intended to be a bond when fully executed and approved. They signed " under the expectation, with the full understanding and with assurances from the judge of the County Court, who took the bond, that the defendant Pugh, would also execute the same as surety. The judge of the County Court assured them that he was authorised to execute the bond in Pugh's name. But he was not so authorised, by which the other sureties were deceived and defrauded;" the authority given by the said Pugh was by parol for the said judge to sign his name to the bond. When the judge came to consider the approval of the bond, doubts arose in his mind as to whether Pugh was bound thereby, and so he would not and never did approve the same.

Pugh is made a defendant, because he resides out of the State,

and his assent cannot be procured to join as a complainant; Mc-Rae is made a defendant, because he refuses to join as complainant. It is also alleged that he is entirely insolvent.

Colclough and the sheriff McRae, answered the bill, but no question arising out of their answers is now before the court, as the chancellor dismissed the bill for want of equity; he considering the complainants as precluded from questioning the judgment in the Circuit Court, in consequence of their proceedings under the writ of error.

This decree is now assigned as error.

Buford, for the plaintiffs in error.
Peck, *contra*.

GOLDTHWAITE, J.—This bill sets out two grounds of supposed equity, upon which the complainants seek relief. The first is, that the neglect of the sheriff to return the execution, was induced by the agent and attorney of the *plaintiff* at law. The other is, that the bond, out of which the liability of the complainants is said to arise, was invalid in point of law.

1. The chancellor considered neither of these grounds, but dismissed the bill, under the impression that the complainants were precluded from coming into equity after the prosecution of the writ of error upon the judgment at law. Our opinion is, that the writ of error has no effect whatever as a bar, for it may be that it was prosecuted for errors which have no connexion with the present aspect of the case, and it would be exceedingly onerous to hold a party concluded from the pursuit of one remedy by seeking another for a matter entirely distinct. The statute doubtless places the matter on its true foundation, when it requires a release of errors to be filed before an injunction shall be awarded; but there is nothing to prevent a party from testing any supposed error by taking his suit to an appellate court, and afterwards, if the case warrants it, from seeking relief in equity. The reason assigned for the decree not being sufficient to sustain it, we are called on to examine the case itself as made by the bill.

2. As to the first point, we are clear, that if the attorney of the plaintiff at law, or an agent properly authorised, had induced the sheriff, by any advice, or direction, to delay the return of the execution in the manner stated by the bill, this would constitute a

sufficient defence to the rule, and neither the sheriff nor his sureties would in such a case, be responsible, because the plaintiff has the undoubted right to control his own process and relieve the sheriff from the necessity for returning it when not executed.

3. But the question here is a different one, and is, whether the sureties of the sheriff can avail themselves of this defence, after the plaintiff at law has succeeded in fixing the liability of the sheriff, and after the statutory judgment has been rendered against them.

The common law rule, that a judgment is not evidence against a stranger to it, is familiar to all, and the mere fact that several persons are jointly, or jointly and severally bound by the same instrument, does not create an exception. Thus it has been held that if A and B, be jointly bound in a recognizance, that A shall keep the peace, and a judgment is afterwards given against him for a breach of it, this judgment is not an estoppel to B, when he is sued on the recognizance; [10 Viner's Ab. 464.] There is some contrariety of decision on this subject in the American Courts, as in some of the States, a judgment against the principal in an official bond, is held to be no evidence against his sureties, whilst in others it is said to be *prime facie* evidence of all the matters ascertained by it, and even conclusive when the principal is by law required to do some particular act. [See the cases collected in Cowen & Hill's Notes 816, 984, 669.]

We do not see clearly, how there can well be any middle ground between rejecting such evidence altogether, or giving it a conclusive effect. If it is said to be *prima facie* evidence against a surety, it may be asked, but cannot well be answered, what means has he to disprove it, or how is he to establish a negative? Again, the judgment against the principal may be induced by his declarations when these would not be evidence against the surety. And do they become so when endorsed by the verdict of a jury? Without undertaking now to determine what is the effect in general, of such judgments, as evidence against the sureties, we prefer to rest this decision upon our own statutes, as was done in the case of Williamson v. Howell, [4 Ala. Rep. N. S. 693.]

4. We think then that our several statutes where they authorise summary judgments to be rendered against sureties, without notice to them, or by giving notice to the principal, were intend-

ed, and have the effect to make the judgment against the principal conclusive of every matter found by it, and that so long as the principal is alive and is made a party, the sureties, as such, are not entitled to litigate the question of liability, except in the name of the principal. We think the intention never could have been to permit a judgment to be rendered which would be conclusive of nothing whatever against the surety, which would be the case, if he is allowed to question the liability of his principal, when that has been judicially ascertained.

The only matters which the surety can litigate in these cases, is the *factum* of the bond, and its legal sufficiency; and the allowance of judgment and execution on it cannot have the effect in any manner to impair their rights, otherwise than to cause the parties to proceed in another forum to ascertain that they exist.

There is no other view in which the constitutionality of these and similar statutes can be sustained, for it cannot be questioned under our constitution and laws, that every person is entitled to have his defences heard, and his suits judicially determined.— The legislature is authorised clearly, by law, to provide that certain consequences shall flow from certain acts ; or, as in this case, that the ascertainment of the liability of the principal shall fix the liability of the sureties; but the facts and circumstances out of which this relation arises, is and must always be, a matter for judicial determination. This consideration, as it shows the surety is concluded by the judgment against his principal, is conclusive against the first ground of equity assumed by the bill.

5. In the examination of the other ground of equity asserted by this bill, our consideration will be first given to the matters which are essential to be set out when a bill is properly filed on such a ground as this. It is sufficiently evident, without any illustration, that in a suit at law upon this bond, the obligors could only dispute their liability, either upon demurrer or by a plea of *non est factum.* As the plaintiff at law already has a judgment, the sufficiency of the pleadings cannot be enquired into here; and in order to avoid the effect of that judgment, and put the plaintiff upon proof of the *factum* of the bond, the allegations of the bill must be equally positive and distinct, as would be necessary to sustain a plea of *non est factum.*

6. The bill asserts that this bond is invalid, for two reasons : 1st. That all the sureties " did sign a paper purporting and in-

tended to be such bond, when fully executed and approved, yet they signed the same under the expectation, with the full understanding, and with assurances from the county judge, who took the same, that Pugh, one of the defendants, would also execute the same as surety ; and that the county judge assured the complainants that he was authorized to execute such bond in Pugh's name. That he was not so authorized, and in this case the complainants were deceived and defrauded by the county judge."

2d. " That though said bond, under parol authority from said Pugh, was by the said judge to be signed with the name of said Pugh, yet that the said Pugh never executed said bond, either in person or by lawful authority, nor ever became a party thereto or bound thereby ; and when the said county judge came to consider of the approval of said bond, doubts arose in his mind as to whether said Pugh was bound thereby, and so he would not, and did never approve the same ;" and the complainants then aver, that the said bond never was received or approved by the county judge of said county of Barbour, or any other proper officer.

The first set of facts, from which the invalidity of this bond is assumed, as we consider them, do not present any defence whatever, nor would they, if pleaded to an action at law, constitute a good plea. It is admitted that the bond was sealed and delivered, by those of the complainants who signed it, under the expectation and assurance that it would also be obligatory on Pugh; but this was not made a condition of the delivery. If, as they assert, the bond was to be signed by an agent, it was clearly their business to ascertain the nature and extent of his authority, if that was considered material by them, but there is no reason why a failure by Pugh to become bound, shall discharge them.

7. The second fact is a more important one, if sufficiently alleged. If the allegation of the bill in this relation, stood alone and unconnected with the positive averment that the bond never was approved by the Judge of the county court of Barbour county, or by any other proper officer, we should consider it argumentative and evasive; but all that may be stricken out, and then the positive and direct averment will remain, that it never was received or approved, as the law directs. This, in our opinion, is equivalent to a denial of the validity of the bond, for the reason that it never was accepted by the person who is constituted the agent of the State to receive it. The proof of this averment is

much more difficult than its assertion; or rather the facts out of which an acceptance will be inferred, are of easy proof, if they exist. This question was fully considered in the Bank of the United States v. Dandridge, [12 Wheat. 64,] and also in Althorp v. North, [14 Mass. 167.] We can add nothing to what is there said. The statute which requires a sheriff, before entering upon the duties of his office, to give bond with such number of good and sufficient securities as may be approved by the county court, [Digest, 388, § 4,] does not require the approval to be manifested by any matter of record, or by writing. It is sufficient, (to use the words of the Court in one of the cases just cited,) to raise a violent, if not a conclusive presumption that the bond was received by the Court, as the security required by the statute, when it is found upon the files, without any evidence accompanying it that it has been rejected, and the principal has proceeded to execute the duties of his office.

As this averment is sufficient to put the fact of the acceptance of the bond in issue, the bill upon its face contains a substantial matter of equity, and therefore ought not to have been dismissed, unless at the hearing, the fact alleged was shown to be untrue.

The decree, for this error, is reversed, and the cause remanded.