# RAGLAND vs. CALHOUN'S ADM'R.

[SUPERSEDEAS OF FI. FA. AGAINST ADMINISTRATOR'S SURETIES.]

1. *Statute of limitations against sheriff's sureties.*—The act of 1832, prescribing six years as the period within which an action must be commenced against the sureties of public officers for the default of their principal, (Clay's Digest, 329, § 90,) does not apply to a summary proceeding against the sureties of a sheriff on his official bond, for the default of their principal as administrator by virtue of his office as sheriff.

2. *Conclusiveness of probate decree.*—A decree of the probate court against an administrator, under his appointment by virtue of his office of sheriff, concludes the sureties on his official bond as sheriff from contesting, before that court, their liability for the default ascertained by the decree, on the ground that, after the expiration of their principal's term of office as sheriff, he was appointed administrator *de bonis non* in his individual capacity, and gave bond with new sureties, who thereby became liable for his previous default.

APPEAL from the Probate Court of Talladega.

Ragland v. Calhoan's Adm'r.

THE appellants in this case were the sureties of Solomon Spence, on his official bond as sheriff of Talladega county, dated the 7th February, 1842. On the 17th March, 1842, letters of administration *de bonis non* on the estate of John C. Calhoun, deceased, were granted to said Spence, by virtue of his office of sheriff. On the 6th May, 1845, after the expiration of his term of office as sheriff, said Spence was appointed, on his individual application, administrator *de bonis non* of said decedent; and thereupon gave a new bond, as such administrator, with different sureties. On the 1st September, 1846, said administrator was required to give additional security; and on his failure to do so, his letters were revoked on the 7th September, 1846, and the administration of the estate was committed to William Easley, by virtue of his office as sheriff. On the 23d December, 1848, after the expiration of Easley's term of office, letters of administration on said estate were granted to Joseph N. Savery, by virtue of his office as coroner of the county. On the 14th May, 1855, on final settlement of said Spence's accounts as administrator, under his first appointment by virtue of his office of sheriff, a decree was rendered against him by said probate court, in favor of said Joseph N. Savery, as succeeding administrator, for $5,686 38. An execution on this decree, against Spence alone, having been returned "no property found," an execution was issued on the 10th September, 1855, against him and the sureties on his official bond as sheriff, and, on the 31st March, 1858, an *alias.* This last execution having been levied on property belonging to the sureties, they thereupon filed a petition for a *supersedeas* in the probate court; alleging, in addition to the facts above stated, that said Spence, up to the time of his individual appointment as administrator of said estate, was never required to settle his former official administration, and had never refused to do so; and that he was then, and for a long time afterwards continued to be, fully able to account for all the assets which he had received; insisting that, upon these facts, all liability for the assets received by him under his first administration was transferred from the sureties on his official bond as sheriff, to

the sureties on his new bond as administrator in his indi-
vidual capacity; and pleading the statute of limitations of
six years, as a bar to the proceeding against them. A
transcript from the records of the probate court, showing
all the proceedings had in the matter of said intestate's
estate, was made an exhibit to the petition. The plain-
tiff in execution demurred to the petition—"1st, because
the statute of limitations of six years is no bar to the
plaintiff's right to collect this money; 2d, because the pe-
tition does not aver that Spence, when he was appointed
administrator in his individual capacity, had in his posses-
sion, unconverted to his own use, the assets of said estate ;
3d, because the administration having once attached
to the office of sheriff, the orphan's court had no au-
thority to detach it, unless the record shows one of the
facts on which the statute gave the authority; and, 4th,
because the facts set forth in said petition are not, in law,
sufficient to authorize the court to quash said execution."
The probate court sustained the demurrer, and dismissed
the petition ; and its ruling is here assigned as error.

Jas. B. Martin, for appellants.
Alex. & Jno. White, contra.

R. W. WALKER, J.—The act of 1821 provided for
the grant of administration to the sheriff or coroner of
the county, where no other administrator had qualified, or
where the administration had become vacant by death, re-
moval or resignation ; and enacted that, in such case, "un-
less the judge shall otherwise order, no other oath, bond or
security, shall be necessary to be given, than the bond and
oath of office already taken and given by such sheriff or
coroner ; but, on his bond for the performance of the du-
ties of his office, he and his securities shall be liable for
his administration, and such bond may be sued, and judg-
ment from time to time recovered thereon, in the same
manner as is or may be provided by law in case of other
bonds of executors, administrators and guardians."—Clay's
Digest, 222, § 10. By the act of 1822 it was provided,
that the act of 1821, above recited, "shall be taken and

strictly construed, so as to attach the administration to the offices of sheriff or coroner, and not to the person."—Clay's Digest, 223, § 10. The act of 1832 declares, that "no action, suit, or motion, shall be maintained against the security or securities of any sheriff, constable, or other public officer of this State, for any misfeasance, malfeasance, or other cause whatever, hereafter committed, unless the same be commenced or prosecuted within six-years next after the commission of the act complained of."—Clay's Digest, 329, § 90.

Spence was, by virtue of his office of sheriff, appointed administrator *de bonis non*, in March, 1842. His term of office, and with it his administration under the appointment just referred to, expired in March, 1845. This proceeding against the petitioners, who were his sureties on his official bond as sheriff, and as such bound for his acts as administrator *de bonis non* by virtue of his office, was not instituted until more than six years after the termination of his administration. The petitioners now invoke the protection of the special statute of 1832, above cited; and the question is, whether the limitation provided by that act applies to a default committed by a sheriff as administrator, when he has been appointed such administrator in his capacity of sheriff, and has qualified and acted as such under his general official bond.

If the statute does apply to such a case, the result produced is certainly a singular one. Under the act of 1821, when a sheriff is appointed administrator *virtute officii*, the court may require him to execute a special administration bond, or may permit him to qualify and act as administrator under his official bond as sheriff. The effect of the statute is, that when the latter course is adopted, the official bond becomes an administration bond, and the sheriff and his sureties are liable upon it, to the same extent as if they had executed an administration bond proper, under an order of the court.—See Gov. v. Davis, 9 Ala. 918. If the court should require the sheriff to execute a special administration bond, there can be no doubt that he and his sureties on such bond would be liable to the summary remedy provided by the act of 1832, (Clay's Di-

gest, 305, § 45;) and that this liability would be wholly uninfluenced by the statute of limitations of six years. If this be true, and if it also be true that the official bond of a sheriff, when appointed administrator by virtue of his office, becomes an administration bond for the purposes of such administration—that in fact the one bond is but a substitute for the other—it would seem to follow, that the sureties should be liable to the same remedies in the one case as in the other; and it would look like defeating the purposes of the statute, were we to hold that, while the statute of limitations affords no protection to the sureties on a special administration bond, it should operate a complete bar in favor of the sureties on the official bond, which is but a substitute for an administration bond proper.

Moreover, the whole frame and phraseology of the act of 1832 point, as it seems to us, to official defaults, and not to omissions of duty by an administrator. The act provided, that if the claim be in favor of an infant, or person *non compos mentis*, &c., the suit might be brought within three years after the termination of the disability; and by the 2d section it was provided, that for any malfeasance, misfeasance, or other cause of action, *theretofore* committed by any sheriff, &c., no suit, &c., should be maintained against his sureties, unless commenced within three years after the passage of that act.—Clay's Digest, 329, § 91. Now, so far as the probate and circuit courts are concerned, no suit can, in the first instance, be maintained against the sureties of an administrator. The default and liability of their principal must be ascertained and fixed, before there can be any proceedings against them. Considering the delays which frequently attend litigation, it is scarcely presumable that the legislature would have prescribed a three-years bar in this class of cases, to persons who had been disabled from bringing suit, or to those who complained of defaults committed before the statute was enacted. The statute, thus construed, would certainly be a hard one; for it would operate a bar in favor of the sureties, at the end of three years, when possibly, with his best diligence, the claimant could not,

within that time, place himself in a condition to commence proceedings against them.

Our conclusion on this branch of the case is, that the statute of limitations affords no protection to the petitioners.

2. The petition alleges, that Spence's term of office as sheriff, and with it his administration by virtue thereof, expired in March, 1845; that on 6th May, 1845, he was, upon his own application, appointed administrator *de b nis non* in his *individual capacity*, and gave a new bond, with a different set of sureties from those who were on his official bond as sheriff; that until after his second appointment, he had never been called upon to settle his administration, and had never refused to do so; and that from the time of his appointment as administrator *virtute officii*, until long after his appointment in his individual capacity, he was fully able at all times to have accounted for the assets he may have received. It is insisted, that Spence's second appointment in 1845, and the execution of his bond, and his qualification under that appointment, operated a transfer of the assets then on hand, to his second administration, and a consequent discharge of the sureties for the first administration from liability therefor; and that from the passage of the act of 4th February, 1846, (Acts '45–6, p. 14,) by which an administrator *de bonis non* was authorized to call the previous administrator to account for all assets which had been received and converted by him, if not from the date of the second appointment, the sureties upon his bond as sheriff were also discharged from any liability incurred for *devastavits* committed during the first administration.

The principle on which this proposition is sought to be maintained is, that where a debt and credit—a right to demand, and an obligation to pay—co-exist, even for a moment, in the same person, the debt is extinguished by presumption of its payment. The argument is, that if the second administration had been conferred upon a stranger, he would have been at once entitled to receive from Spence all unadministered assets on hand; and that after the passage of the act of 4th February, 1846, he could

have called Spence to a full account of his administra-
tion; that when the second administration was con-
ferred, not upon a stranger, but upon Spence, the former
administrator, he became entitled, in his new capacity,
to a transfer of the unadministered assets; that on the
passage of the act of 1846, he became entitled to an ac-
count of the past administration; and being thus both
debtor and creditor, and incapable by recognized legal
process of suing himself, or obtaining this account and
transfer, the same results were produced by *operation of
law*; and Spence, as administrator by virtue of his office,
and his sureties for that administration, were discharged
from all liability on account thereof, and a corresponding
liability substituted in Spence as administrator in his in-
dividual capacity, and his sureties under this second ap-
pointment.—See Enicks v. Powell, 2 Strob. Eq. 196, 205–
6–7; also, Trimmier v. Trial, 2 Bailey's Law R. 486–7;
Joyner v. Cooper, *ib.* 199; Simkins v. Cobb, *ib.* 60, 65.

Whatever may be the ultimate decision of the interest-
ing question here suggested,—which we leave open to be
decided when it arises, not intending by anything we have
said to intimate an opinion the one way or the other,—it
can be of no avail to these petitioners, for the reason, that
the probate court has, by its decree, determined that
Spence was liable for the amount thereof, in his capacity
as administrator *de bonis non* by virtue of his office of
sheriff; and that his securities are concluded by that de-
cree. It is too well settled in this State to be any longer
the subject of controversy, that, in the absence of fraud,
the sureties of an administrator are concluded by a final
settlement of their principal in the probate court.—Lam-
kin v. Heyer, 19 Ala. 228, 233; Williamson v. Howell,
4 Ala. 693; Slatter v. Glover, 14 Ala. 648; McLure v.
Colclough, 5 Ala. 69; Watts v. Gayle, 20 Ala. 817; Per-
kins v. Moore, 16 Ala. 16. It is shown by the record from
the probate court, which is attached as an exhibit to the
petition, that the proceeding which led to the decree
against Spence, was a proceeding for the final settlement
of his accounts as administrator *de bonis non* by virtue of
his office of sheriff, under the appointment made in March,

1842; and the decree which was rendered by the court is against "Solomon Spence, late sheriff of Talladega county, and as *such* administrator *de bonis non,*" &c. The settlement made was, upon its face, a settlement of the first administration, for which the petitioners were sureties. If, by reason of his second appointment and qualification, Spence was, in his capacity as administrator *de bonis non* by virtue of his office, discharged from the sum charged against him in the account stated by the probate court, he could have shown this fact ·on the final settlement, and protected himself from the decree which was rendered. This he did not do, and his failure is conclusive alike on him and his sureties. The question cannot be again litigated in the probate court; for that would be to upset the entire settlement, for the mere purpose of contesting a fact, which could have been tried at the final settlement. The defense insisted on is, that Spence was liable for the assets of this estate under his second administration, and not his first. But the decree of the court ascertains that he was liable for them under his first appointment; and that decree concludes alike him and his sureties.—Lamkin v. Heyer, 19 Ala. 232; Williamson v. Howell, 4 Ala. 693; Slatter v. Glover, 14 Ala. 648; McLure v. Colclough, 5 Ala. 69, 70; Spence v. Savery, 25 Ala. 731.

Decree affirmed.

A. J. WALKER, C. J., not sitting.