## Ex Parte MITCHELL.

[PETITION FOR HABEAS CORPUS.]

1. *Right of exemption from military service as bonded agriculturalist.*—
   When a person makes application for exemption from military service as a bonded agriculturalist, under the 10th section of the act of congress approved February 17, 1864, and shows to the proper officer that he has a right to make such application, and complies with all the requisitions of the law on his part, as to the execution and delivery of his bond ; the government is allowed a reasonable time, within which to ascertain and determine whether his offer is in conformity to the law, and to accept his offer ; but the failure of the government to signify its acceptance within a reasonable time, cannot defeat or prejudice his right of exemption ; nor can the government make the approval of the bond by any officer necessary to perfect his right.

Ex parte Mitchell.

2. *Burden of proof, on question of liability to militia service.*—On *habeas corpus*, by a person who is held in custody as a militia-man, and who claims exemption on the ground that he is in the military service of the Confederate States ; the petitioner having shown that he has been enrolled as a conscript, the *onus* is on the State to show that he has been discharged from that service; and proof of the fact that he has made application for exemption as a bonded agriculturalist is not sufficient, unless it is also shown that his right of exemption on that ground has been consummated by a full compliance on his part with all the requisitions of the law.

THE petitioner in this case made application, on the 18th August, 1864, to the probate judge of Montgomery county, for the writ of *habeas corpus*, to procure his release and discharge from the custody of Capt. Gray Thigpen, who held and detained him as belonging to a company of second-class militia, who had been ordered out by the governor. "On the trial of the cause," as the bill of exceptions states, "the petitioner proved that, on the 20th May, 1864, he was enrolled as a conscript by the enrolling officer of Montgomery county, under the act of congress approved February 17, 1864; that he subsequently applied for an exemption as an agriculturalist, under the 4th paragraph of the 10th section of that act; and that, on the 5th August, 1864, he was furloughed by said enrolling officer, for sixty days, to await decision on said application. The State then introduced as a witness the enrolling officer of said congressional district, who testified, that the practice was for the enrolled men to make application for exemption, under said paragraph, to the enrolling officer of the county, by whom it is sent, with his action endorsed, to the enrolling officer of the congressional district, by whom it is examined, his action thereon endorsed, and sent, with bond, &c., if approved by him, to the office of the commandant of conscripts for the State, Col. H. C. Lockhart, for approval; that the application, when acted on by said commandant for the State, is returned by him, with his endorsement thereon, to the enrolling officer of the congressional district, and, if approved, he issues the final exemption; that the application of the petitioner in this case was approved by the enrolling officer of the county, on the 20th May, 1864, and sent up to him (witness), by whom it was consid-

ered as complete under the orders and regulations then existing, and was approved by him, and forwarded to the office of the said commandant of conscripts for action; and that it had not been sent back by him. The witness testified, also, that there were orders issued since the 20th May, which the bond may not have been in accordance with. The petitioner then proved, that the commandant of conscripts had directed his application and bond, which had been sent up to the office of said commandant, to be returned to the enrolling officer of said congressional district, for revision, with this endorsement thereon, made by order of said commandant: 'Montgomery, July 20th, 1864, Respectfully returned for revision; bond must be made as required by circulars from this office, of 20th June, and 8th July, 1864'; and that said application and bond had not, up to that time, been returned. This being all the evidence in the case, the probate judge decided that the petitioner was liable to militia service, and remanded him to the custody of said Thigpen; to which ruling and decision the petitioner excepted."

The petitioner renewed his application to this court on the 5th September, 1864, and appended to his petition, as an exhibit, a copy of the proceedings had before the probate judge, as shown by the bill of exceptions. By an agreement of record, entered into between the counsel of the respective parties in this court, it was admitted, that the bill of exceptions should show "that the petitioner was furloughed, on the 20th May, to await the decision of his claim to exemption; that his furlough was renewed, on that ground, from time to time, until the present; and that the sureties on his bond for exemption were good and sufficient."

GEO. GOLDTHWAITE, for the petitioner.
P. T. SAYRE, for the State.

A. J. WALKER, C. J.—The petitioner asks for a discharge from detention in the service of the State as a militia-man. He says he is in the military service of the Confederate States, and therefore cannot belong to the State militia. The State, on the other hand, says he has

been exempted, as an agriculturalist, by the Confederate States, and that he therefore is liable to render service in the militia. So the *issue* of the case is an affirmation on one side of exemption from the military service of the Confederate States, and on the other a denial of it; and the adjudication of this *issue* depends upon the question, whether such proceedings have been had under the act of congress of 17th February, 1864, as to invest the petitioner with an immunity from service in the army of the Confederate States.

The facts before us are, that the petitioner was enrolled as a conscript; that he applied for an exemption, under the 4th paragraph of the 10th section of the above-named act; that his bond was approved by the enrolling officer of the county, on the 20th May, 1864, and sent up to the enrolling officer of the congressional district; that it was approved by the latter officer, and by him forwarded to the commandant of the State; and that on the 20th July, 1864, the commandant endorsed his decision on the bond as follows: "Respectfully returned for revision; bond must be made as required by circulars from this office of 25th June and 8th July, 1864." The sureties on the bond were good and sufficient, and the petitioner has been continually furloughed since the 20th May, to await the decision of his claim to exemption. Upon these facts, and these alone, we are to decide whether the exemption of the petitioner from the military service of the Confederate States has been consummated.

The act of 17th February, 1864, only gives an exemption where the following conditions exist: 1st, that there were on the 1st January, 1864, and at the date of the act, fifteen able-bodied field hands, between the ages of sixteen and fifty, on the plantation; 2d, that there was no white male adult on the plantation, not liable to military service; 3d, that the person claiming the exemption was, on the first day of January, 1864, either the owner and manager, or the overseer of the plantation. Whether these three conditions existed in this case, we are not informed. The case, however, seems to have been treated below, as it has been treated by counsel in this court, upon the concession

that they did exist; and it is perhaps inferrible from the fact that the bond was approved, and forwarded by the local enrolling officer, that the existence of those conditions was ascertained by him before he acted on the bond. I shall, therefore, proceed in the investigation of the case upon the supposition, that the *status* of the petitioner was such as to entitle him to apply for and obtain an exemption by complying with the further requisitions of the law.

The law of 17th February, 1864, requires the applicant, as a condition precedent to the exemption, to execute a bond, payable to the Confederate States of America, "in such form, and with such security, and in such penalty, as the secretary of war may prescribe." It also prescribes the condition of the bond, and requires the taking of a further obligation in reference to the sale of the marketable surplus of provisions and grain. On the 18th March, 1864, the secretary of war, acting through the bureau of conscription, prescribed the penalty of the bond, and directed that the bond should be secured by personal security, or a deposit of treasury-notes. On the 24th March, 1864, the war department of the government, in what is denominated "*Circular No.* 12," prescribed the form of bond, which embraced the specified obligation as to the sale of the marketable surplus of provisions and grain. We are not informed whether the bond executed by the petitioner was drawn in conformity with the prescribed form, or was in the prescribed penalty; and we have no means of ascertaining, except as we may infer from the action of the three different officers of different grades, through whose hands it passed. It is inferrible that the enrolling officers for the county and congressional district decided that the bond was correct in every particular, when they approved it. Their judgment of approval includes such a decision. No such inference can be drawn from the conduct of the commandant; for he withheld his approval, and returned the bond for revision, with a direction that bond must be made conformable to certain orders from his office. This action must be deemed the expression by that officer of a disapproval of the bond.

The orders of the war department contemplate that the enrolling officer should, with the advice of an advisory

board, pass upon the application, and accept the bond; and that the application and bond should be transmitted to the commandant of the State for his approval. General Orders, No. 26, III, IV; General Orders, No. 33, VIII. §§ 3, 4, 5. It was certainly competent for the government, through the war department, to charge some particular officer with the duty of accepting the bond, and approving it, if found conformable to the law and the regulations; and, for greater security, it might direct, as it has done, that the application and bond should pass under the supervision of two officers successively. It has been seen that the secretary of war is authorized by the law itself to prescribe the form, penalty, and security of the bond. The secretary of war has prescribed the form, penalty, and security, and designated officers to determine the conformability of the bond to his directions, and, deciding affirmatively upon those points, to accept and approve.

This acceptance and approval of the bond may be given actually, or facts may appear from which they will be presumed. If the applicant for an exemption should execute and deliver his bond, in conformity to the law and orders governing the subject, and show to the proper officer that he was of the class of persons having a right to claim an exemption, the law would, after a reasonable time, in the absence of evidence that the bond has been acted on, presume the acceptance and approval.— *United States v. Dandridge*, 12 Wheaton, 64; *Postmaster-General v. Norvell*, Gilpin's R. 106; *Broome v. United States*, 15 Howard, 143; *United States v. Le Baron*, 19 Howard, 73; *Green v. Wardwell*, 17 Ill. 278; *Carmichael v. Governor*, 3 Howard, 236; *Bruce v. Maryland*, 11 Gill & J. 382; *State v. McAlpin*, 4 Iredell's Law, 140.

The act of congress authorizes the bestowment of an exemption, and prescribes the consideration and condition precedent. This arrangement under the law has the similitude of a contract between the agriculturalist seeking an exemption and the government. In determining the rights of the parties under the law, we must allow to it the incidents of a contract, so long as the law remains in force. The government, by a law, gives the right of an exemption

to a certain class of persons, upon their compliance with a certain condition. When they have complied with that condition, they have a right to an exemption, subject to this qualification, that the government shall have a reasonable time to ascertain and determine whether the offer is in conformity to the law and the orders adopted in pursuance of it, and to accept the offered compliance. This I understand to be the law of contracts, where a party has a right dependent upon the performance of a condition, which he cannot perform without the acceptance of the other party. Addison on Contracts, 1132. I therefore think that, while the government has a right to appoint officers to accept and approve the bond, the party has a right to have that acceptance and approval announced within a reasonable time; and that upon a failure in that particular, the right of exemption springs up, as it would have done with an acceptance and approval.

While the war department has a right, through its officers, to examine and accept the bond, and make the approval of the bond the evidence of its acceptance; the law does not make an approval indispensable to an exemption. The right to an exemption cannot be made to depend upon the approval of any officer. The law does not subject it to such a condition. It is not like the case of an official bond, which the law requires to be approved by some particular officer or court. In such a case as that, the qualification f̕ ᴦe office, and acceptance of the bond, are not complete ᴠ ᴁtil the approval is given.—*McClure v. Colclough*, 5 Ala. 65; *Crawford v. Meredith*, 6 Ga. 552; *McBride v. Commonwealth*, 2 Watts, 448; *Carmichael v. Governor*, 3 How. 236; *United States v. Le Baron, supra.* Here, the law does not make the right of exemption depend upon the approval of the bond by any officer. The right exists as soon as the government has had a reasonable time to examine and accept it; and the secretary of war has no right to superadd the condition, that the bond should be approved. It may appoint its agents and officers, to ascertain whether the bond is in accordance with the law and orders of the department passed in pursuance of it, and prescribe that those officers shall approve the bond;

Ex parte Mitchell.

but, if the applicant has done all required by the law, and given the proper bond, the officer of the government cannot, by withholding his approval for an unreasonable time, or by disapproving the bond, deprive the applicant of the exemption, to which the law gives him a right. I shall not undertake to decide what is a reasonable time. It is not necessary for me to do so in this case. I will remark, however, that the third paragraph of the orders of March 1st, 1864, (General Orders, No. 26,) authorize the county enrolling officer, upon approving an application, to grant an exemption for a period not exceeding sixty days, upon the evident supposition, that sixty days was long enough for the examination and acceptance or approval of the bond. This seems to indicate that, in the view of the department itself, sixty days would be a reasonable time. The officers in this State seem, from the record before us, to have adopted the plan of granting furloughs during the interval of the pendency of the application. This course certainly does not lessen the necessity for diligence in passing finally upon the applications.

In this case, it does not appear that the petitioner had executed the bond required. Nothing in favor of the bond is shown, except that the sureties were good and sufficient. It cannot be affirmed that he has done what is necessary to clothe him with the right of exemption. He, *prima facie*, is a conscript in the service of the Confederate States. He is proved to have been enrolled as a conscript. The *onus* was upon the State to show his exemption from that service. This the State has failed to do, as far as we can discover from the record.

I decide, that the judge of probate erred in deciding, upon the evidence before him, that the petitioner was not in the service of the Confederate States, and was liable to serve the State in the militia. Judge Stone concurs with me in my conclusion, though not in my argument.

The judgment of the probate judge is reversed, and the petitioner discharged.