KIMBALL, Adm'r, &c., vs. MOODY, Adm'r, &c.

[BILL IN EQUITY BY CREDITOR'S AGAINST DEBTOR'S PERSONAL REPRESENTATIVE—EXTINGUISHMENT OF DEBT BY RETAINER—JURISDICTION OF EQUITY WHERE LEGAL REMEDY IS ADEQUATE, SPECIFIC, AND PERFECT.]

1. *Extinguishment of debt by appointment of creditor as debtor's executor—How far English doctrine obtains in this State.*—In England, if a debtor makes his creditor, or the executor of his creditor, his executor, and the latter accepts the trust, and receives sufficient assets of the debtor's estate, the debt is extinguished; but this doctrine, which results from the power there possessed by the executor over the personal estate of his testator, does not obtain to the same extent in this State, where an executor has no right to take the assets other than money and retain them in satisfaction of his debt; and consequently, in such case, the debt cannot be considered extinguished, unless it is also shown that moneys came to the hands of the executor, which were sufficient for the payment of the demand, and which he might lawfully retain in satisfaction of it.

2. *When retainer, and consequent extinguishment, will be presumed.*—Where it is shown that the debtor, at the time of his death, was seized and possessed of a large estate, consisting of both real and personal property, which went into the hands of his executor, who administered on the estate for nearly twelve years, and at his death left a large portion of the assets unadministered, which afterwards came to the hands of his successor, it will be presumed that the executor did his duty—that he reduced into money assets of suffi-

cient amount to pay the debts of the estate ; and since (if he did not) he ought and could have done so, equity will consider that as done which ought to have been done, and hold the debt extinguished.

3. *Trustee cannot come into equity to collect purely legal demands, when remedy at law is adequate, specific, and perfect.*—A bill in chancery, filed by an administrator, or other trustee, to enforce the collection of a purely legal demand, for which his remedy at law is adequate, specific, and perfect—seeking no discovery, account, recovery of specific choses in action, or particular trust fund—is without equity: the mere fact that the proceeds of the demand, when collected, will be trust property, does not give equity jurisdiction.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Franklin G. Kimball, the appellant, as administrator *de bonis non* of John C. Sims, deceased, against Washington Moody, the appellee, as administrator *de bonis non, cum testamento annexo,* of Edward Sims, deceased. It alleged, in substance, that said John C. Sims departed this life sometime before the first day of January, 1837, intestate, and leaving a considerable real and personal estate ; that one Aaron Ready, before the first day of February thereafter, was duly appointed the administrator of his estate, gave bond and qualified as such administrator, and entered upon the duties of his office ; that afterwards, on the 6th February of the same year, one Edward Sims, who was the father of said John C. Sims, being indebted to said Ready as such administrator in the sum of $353 28, executed to said Ready, as such administrator, his promissory note for that amount; that on the 19th May next thereafter, said Ready had in his possession, as part of the assets of his intestate's estate, certain bills of exchange and a promissory note, which are particularly described in the bill, and that on said last-mentioned day said Ready delivered said note and bills of exchange to said Edward Sims, to be collected by him, or to be used by him, and to be accounted for, and took his receipt for the same, which is attached to the bill as an exhibit; that said note and bills of exchange were on punctual and solvent men, and were afterwards paid by the debtors to said Edward Sims, or to those to whom he may have endorsed or transferred them.

The bill further alleges, that said Edward Sims departed

this life on or about the first day of August, 1840, having first made and published his last will and testament in writing, wherein he appointed said Ready and one Willis Banks as his executors; that said executors, on the 14th August, 1840, proved the said will in the proper court, took out letters testamentary, and entered on the duties of their office as executors of said Edward Sims; that said Ready continued to act as executor of said Edward Sims, and also as administrator of said John C. Sims, until his death, which occurred in January or February, 1852; that said Banks, his co-executor, also departed this life in the summer or fall of the same year; that after the death of said Ready, one Duke W. Goodman was duly appointed administrator *de bonis non* of the estate of said John C. Sims, but he soon afterwards resigned, and complainant was then appointed administrator *de bonis non* of said estate; and that after the death of said Banks, to-wit, on the 16th November, 1852, the defendant was duly appointed administrator *de bonis non, cum testamento annexo,* of said Edward Sims.

It is further alleged, that said Edward Sims, at the time of his death, was seized and possessed of a very large estate, real and personal, a large portion of which remained unadministered at the death of his said executors, and subsequently passed into the hands of their successors in the administration; that said Edward Sims departed this life, as aforesaid, without ever having paid said note, or in any manner accounted for the note and bills of exchange described in his said receipt, thus leaving them valid and subsisting claims against his estate; that said claims were never paid by his said executors, nor was any amount retained by said Ready for that purpose out of the assets of his estate; and that they have never been paid by defendant, but are still valid and subsisting claims against the estate of said Edward Sims, in the hands of defendant as his administrator.

The bill waives an answer on oath, and prays that said claims be decreed valid and subsisting demands against the estate of said Edward Sims; also, for a reference to the master to take an account of the amount due on them, and for general relief.

The chancellor sustained a demurrer to the bill for want of equity, holding that the debt was extinguished; and his decree is now assigned for error.

E. W. Peck, for the appellant:

1. On the question of jurisdiction, the court is referred to the chapter on administration in Story's Equity, vol. 1, commencing with section 530. Ready held the notes and bills of exchange mentioned in the bill, as the administrator of John C. Sims, deceased. He held them, therefore, not as his own, but as trustee. This fact, as is shown by the language of the receipt, and as is stated in the bill, was known to Edward Sims when he received them, and he was consequently bound by the trust; and he being dead, his estate is accountable for them as trust property.—Story's Equity, vol. 1, § 533; Dodson v. Simpson, 2 Rand. 294–99; Fisher v. Bassett, 9 Leigh's Rep. 119.

2. The doctrine of extinguishment does not apply to this case. The common-law doctrine of extinguishment is inconsistent with our system of administration. The reason on which the doctrine of the common law is based, is, that if the executor be a creditor of the testator, and as executor receives goods of the estate to the value of his debt, the property in such goods is altered, and becomes vested in the executor—that is, he has them as his own proper goods, in satisfaction of his debt, and not as executor; so that, in such case, there is a transmutation of property by operation of law. Woodward v. Lord Darcy, 1 Plow. 183, 185 a; cited in Page v. Patton, 5 Peters, 312. Under our system of administration, there can be no such thing: with us, an executor cannot even take the property of the estate at its appraised value; much less can he value it himself, and then take it in satisfaction of his debt. There can be no transmutation of the property, except in the mode prescribed by the statute—to-wit, a public sale made under the order of the Probate Court.— Fambro v. Gantt, 12 Ala. 304; 2 Greenl. Ev. § 349.

3. But, if it be conceded that the doctrine of extinguishment applies in cases where the debtor makes his creditor his executor, it cannot apply in this case, because Ready was not in fact the creditor of Edward Sims. He held these notes and bills of exchange as the administrator of John C. Sims, deceased—as a mere trustee; and, as such trustee, deposited them with Edward Sims, who had a full knowledge of the trust, and who therefore became accountable for them himself

as trustee ; and consequently his administrator *de bonis non* is bound to account for them as trust property, and cannot claim to be discharged by the doctrine of extinguishment.— 1 Story's Equity, § 533.

4. The doctrine of extinguishment grows out of the right of retainer—a right intended for the benefit of executors being creditors ; a right that may be postponed, if the estate be not injured in so doing, but was never intended to mislead or entrap executors.—Page v. Patton, 5 Peters, 316; 1 Lomax on Ex'rs, 415; 3 P.Wms. 184. Besides, in a proper case, the law only presumes that the debt is satisfied, when goods come to the hands of an executor to the amount of his debt ; and being a presumption, it may be rebutted. It is not true that, in this State, where an action is once extinguished, it is gone forever ; for, if an administrator sell property, not in conformity to the statute, although the purchaser gets no title, yet the administrator who made the sale can bring no action, but his successor in the administration may.—Fambro v. Gantt, 12 Ala. 304.

5. It does not follow that the right to retain extinguishes the debt. If the person entitled to the administration be an infant, and administration *durante minoritate* is granted, the administrator may not only retain his own debt, but also for the infant ; but if he does not retain for the infant, the infant's debt will certainly not be extinguished.—2 Williams on Executors, p. 690.

6. The bill in this case does not show that Ready, as executor of Sims, had received goods to the value of these claims; and the question, therefore, could not be made by demurrer.

7. But Ready, as administrator, held the notes and bills as trustee for the creditors and distributees, and his neglect to retain will not be permitted to operate to the prejudice of his *cestuis que trust*—that is, it will not be allowed to operate as an extinguishment so far as they are concerned.

W. MOODY, *pro se, contra :*

I. As to the jurisdiction of the court on the case made by the bill : The remedy on the note belongs exclusively to a court of law, and no facts or circumstances are stated to give chancery jurisdiction. The complainant insists, however, that

the receipt for the bills of exchange and other note is a matter of trust, and that therefore chancery has concurrent jurisdiction; and this depends on the question, whether a court of law, under the actual circumstances, could give "adequate, specific, and perfect relief."—1 Story's Equity, § 76; Maury's Adm'r v. Mason's Adm'r, 8 Port. 217; 3 Black. Com. 431, 437; Knotts v. Tarver, 8 Ala. 744; McGehee v. Dougherty, 10 *ib.* 864; Lockard v. Lockard, 16 *ib.* 423; 2 Stew. 522; 5 Port. 561; 9 *ib.* 636; Kimbro v. Waller, 21 Ala. 378; 13 Sm. & Mar. 328. No facts or circumstances are stated in the bill, showing, or tending to show, that a court of law could not do all that complainant asks. He claims certain sums of money, alleged to have been had and received for his use, with interest thereon; all alleged to be shown by a writing that ascertains the amount. No discovery is sought, and no account is required to be exhibited; but on the contrary, the bill repudiates these, by waiving an answer under oath.—Hitchcock v. Lukens, 8 Port. 339; Strickland v. Burns, 14 Ala. 514; Cameron v. Clark, Smith & Co., 11 *ib.* 263; Houston v. Frazier, 8 *ib.* 85. The Code (§ 602) definitely settles this question, in accordance with the authorities cited; carrying out the view of Judge Story, that "the concurrent jurisdiction of equity has its true origin in the inability of the courts of law, under the actual circumstances of the case, to give adequate, specific, and perfect relief." By this section, the jurisdiction of chancery is expressly fixed and prescribed.

II. As to the right of retainer, and its effect in destroying the suit.

1. An executor may pay a debt due from his testator to himself, or to another estate which he represents, out of the assets of his testator; and if there be assets sufficient, he is bound to pay it at the risk of losing the debt, for the right to sue (in lieu of which the right to retain was given) is gone forever. That this is the established doctrine of the common law is not denied.—1 Lomax on Executors, pp. 415–18. It has been recognized and acted on by several courts of high authority in this country; and, after a diligent examination of the authorities, I have not found a single conflicting decision.—Muse v. Sawyer, Term Rep. (N. C.) by Taylor, 210; Dozier v. Sanderlin, 1 Dev. & Bat. Law R. 246; Chaffin v.

Hanes, 4 Dev. Law R. 103 ; Page v. Patton, 5 Peters, 311 ;
Smith v. Watkins, 8 Humph. 331, which covers the whole
ground, Gatewood v. Lyle, 5 Mon. 7; Morris v. Morris, 4
Gratt. 293, · cited in the U. S. Ann. Digest, vol. 4, p. 223,
§ 79 ; Decker & Tyson v. Miller, 2 Paige's R. 149 ; Hosack
& Blunt v. Rogers, 6 ib. 415; Milam v. Ragland, 19 Ala. 85;
Knight's Distributees v. Godbold, 7 ib. 304 ; Shortridge v.
Easley, 10 ib. 520; 3 Johns. Chan. 312.   The administrator
de bonis non stands in the place of the first administrator, is
bound wherever the latter would be bound, and concluded by
whatever would conclude the latter.—1 Rice's Eq. R. 40 ; 3
Rand. 287; 6 How. U. S. 60; 7 Ala. 598.

2.  There is nothing special in the legislation of this State
to set aside the doctrine, except in case of insolvency.   The
law abolishing the distinction in dignity between bond and
simple contract debts cannot have that effect—it only makes
the right of retainer more general.—8 Humph. 331, *supra* ;
19 Ala. 85 ; 7 ib. 304 ; 10 ib. 520.   The objection that an
executor, under our laws, cannot take property at its appraised
value, nor dispose of it otherwise than by sale, would apply
as well to all the other States of this Union, and to England :
he must, in either country, pay all the debts with money—by
a sale of property, if necessary.

3.  That the doctrine of trusts does not apply to moneys
collected on bills and notes, though for an executor, is fully
shown by the case of Maury's Adm'r v. Mason's Adm'r, 8
Port. 217, where it is said that money has no ear-marks ; see,
also, Kimbro v. Waller, 21 Ala. 378; 13 Sm. & Mar. 328; 15
Wend. 302.   But if it did, how could that affect the right of
retainer ?   If an attorney collects money for an administra-
tor on bills and notes, and then dies, having appointed that
administrator his executor ; could not the latter retain, if he
accepts the appointment, and has assets ?   How else, since he
cannot sue himself, could he get the money ?   Being the per-
son who is both to pay and to receive, the law gives him, as
an equivalent for the right to sue, the right to retain.   By
accepting the one, he gives up the other, and it is gone forever.

NOTE BY REPORTER.—The briefs of counsel on the statute
of limitations, and on several other points presented by the
record, are necessarily omitted.

Kimball, adm'r, &c., v. Moody, adm'r, &c.

CHILTON, C. J.—According to the English doctrine, if a debtor makes his creditor, or the executor of his creditor, his executor, this alone is no extinguishment of the debt, though there be the same hand to receive and to pay ; yet, if the executor has assets of the debtor, it is an extinguishment, for the reason, that the person to receive is the same person who ought to pay the money.—Woodward v. Lord Darcy, 1 Plow. 185 ; Fryer v. Gildridge, Hob. 10 ; Williams on Executors, 943. The extinguishment of the debt is upon the supposition that the creditor has assets which he may lawfully retain to pay himself.—Powell, J., in Waukford v. Waukford, 1 Salk. 303 ; Williams on Executors, *supra.*

This doctrine would seem very naturally to result from the power which the executor, under the English law, possesses over the personal estate or assets. It is laid down as an elementary rule, which obtains both at law and in equity, that an executor has an absolute power of disposal over the whole personal effects of his testator or intestate ; and that they cannot be followed by creditors, or legatees, either general or specific, into the hands of the alienee.—Whale v. Booth, 4 Term R. 625 ; Nugent v. Gifford, 1 Atk. 463 ; Williams on Executors, 670. He may pay debts due from his testator, and retain assets of equal value, or dispose of absolutely or mortgage the assets, and such mortgage may be by actual assignment, or by deposit ; and although the purchaser, or mortgagee, knew that he was dealing with an executor, he is not bound to see to the application of the purchase money. In the language of Lord Thurlow, in Scott v. Tyler, 2 Dick. 725, " His title is complete by sale and delivery. What becomes of the price is no concern of his."—See Williams on Executors, 671, and cases cited in notes, (ed. of 1841.)

Such being the general powers of an executor over the assets, as recognized by the English law, it might very well be assumed as reasonable and just, that, having sufficient assets and the right to set them apart for his individual use in payment of a debt due to him from the estate, if he failed to do so, he should not be allowed, nor should his personal representative be permitted, to maintain an action for the recovery of the demand. If he failed to pay it by retaining, this was his folly, and he thereby lost his debt, the right of action being extinguished.—Plow. 185.

. But this rule cannot be applied here to the extent to which it obtains in England. So far as the reason on which it is based applies here, it must be recognized ; but our legislation has made a very great change upon the law as it is held in England. The personal representative, with us, is expressly prohibited by statute from taking the goods at their appraised value, or from disposing of them except at public sale. He cannot, therefore, retain the assets, and acquire the absolute right to them, in satisfaction of his demand. He is bound to pay the debts in money, if the estate be solvent ; and if it be insolvent, he has no right of retainer, but the debts are to be paid *pro rata*.

Now the reason why the demand is considered extinguished is, that the personal representative, who is to pay and to receive, has the means of making the payment—that is, when he receives assets which he may thus appropriate to his debt, he ought so to appropriate them ; and the law considers them so appropriated, and the debt consequently extinguished. Let the same rule obtain here, modified according to our law ; as he has no right to take the assets, except it be money, and appropriate the same to the payment of his debt, or retain them, the demand cannot be considered as extinguished, unless it be shown that he had moneys in his hands adequate to the satisfaction of his demand, and which he lawfully might appropriate, or, rather, retain in extinguishment or payment of such demand. If Ready had moneys of the estate of his testator, Ed. Sims, which he ought to have retained, the court should consider that as done which he ought to have done— will consider the demand extinguished by the retainer. But to hold the demand extinguished, because personal goods other than money came to his hands, which our law forbids him to retain, but which it requires should be sold at public outcry so far as may be necessary for the payment of debts, is to make the law inconsistent with itself, which is absurd. Here, there can be no transmutation of the assets, other than money, in the hands of the executor, from his fiduciary to his individual use in satisfaction of his demand. In England it is otherwise. Hence, there is an obvious propriety in holding that the receipt of assets other than money sufficient to pay the debt, works no extinguishment of the demand. The

courts which have ruled otherwise seem to have overlooked this distinction.

2. Let us in the next place briefly consider the equity of the bill, subjecting it to the test we have above laid down.

The bill shows that Ready was the personal representative of the estate of John C. Sims, the creditor, and of Ed. Sims, the debtor, and that consequently he had the right to retain. 2 Wms. Ex'rs, 768, mar. p. (ed. 1841) ; 1 Rolls' Abr. 922 ; Hobart, 10 ; 6 Paige's R. 415–425. It further shows that Edward Sims died in August, 1840, some three years after the indebtedness accrued, and that Ready and one Banks qualified as his executors, and so continued to act until the death of Ready in February, 1852 ; Banks, the other executor, dying in the summer or fall of the same year. The bill likewise avers, " that the said Edward Sims, at his death, was seized and possessed of a very large estate, real and personal, a large portion of which remained unadministered at the death of the said executors," and which has since gone into the hands of Moody, the appellee, who has been appointed administrator with the will annexed, *de bonis non*, of Edward Sims ; that the appellant has been duly appointed administrator *de bonis non* of John C. Sims. It is then averred that Ready did not retain for the indebtedness now sought to be collected, that the executors of Sims did not pay, nor has Moody the administrator paid, any portion thereof.

It thus appears from the face of the bill, that Ready had eleven years and more, within all which he could have paid this demand. It was made his duty by law to have reduced sufficient of the assets of the estate of Edward Sims into money to pay the debts of that estate. The bill shows that the estate was very large, and that after twelve years administration upon it, a large amount of assets remained unadministered, and which have gone into the hands of Moody, the administrator *de bonis non*. As the contrary is not shown by the bill, we must presume the executor did his duty—that he reduced the assets into money of sufficient amount to satisfy the debts. At all events, if he did not do so, he ought and could have done so, and must be considered as having done it. It is fairly inferable from the bill that he could have retained ; and under these circumstances, Ready would

have been concluded, and the doctrine of retainer, as it is recognized by all the cases which we have seen, and under the modification we have before mentioned, would apply. It follows, therefore, that the demand must be considered as extinguished.

The bill shows that Ready had assets which he could have applied to the debt, and which it was his duty to have applied in the regular course of administration; and if, having these means and this power, and more than eleven years in which to pay himself, he failed to do so, it is the result of his negligence and mismanagement. We have seen no case which would exempt this from the influence of the doctrine of extinguishment. True, a doctrine in Page v. Patton, 5 Peters 311, seems to indicate that this doctrine would not apply, where all debts are placed upon an equal footing; but we are unable to see the reason for this distinction, and the learned judge gives none. It is also intimated in that case, that the doctrine of extinguishment rests on a presumption of retainer which may be rebutted; but this must be considered as applicable alone to the continuation of the right to retain while the same person is to pay and receive, which right is not taken away by appropriating assets to the payment of other demands which might have been retained in satisfaction of the claim due to the administrator.

Upon the whole, while we would not push the doctrine to the extent to which it is carried by the opinion of the chancellor, but must give it a modified application, by requiring it to be shown that the administrator or executor had such assets as he could have applied by an appropriation of them to the extinguishment of the claim due him; yet, when, as in this case, the estate is very large, and more than eleven years elapse, during all which time the administrator has ample power to make the appropriation and satisfy his demand, the law will raise the conclusion that he has done so, and if he has not, it is his fault, which cannot be set up by the administrator *de bonis non* of the estate of the debtor as a ground for a resort to equity.

3. If, however, this view were incorrect, the bill on its face shows an entire want of equity upon another ground. As to the demand due from Edward Sims to John C. Sims, and

which was not collected by Ready, no reason is shown why it might not just as well be recovered at law. The legal remedy is full, adequate, and undisputed. No discovery is sought, and no impediment to a complete legal remedy is averred. As to the claims embraced in the receipt, it is not pretended that any particular fund is in the hands of Moody as administrator of Edward Sims, to which a trust may attach. If the money was collected by Edward Sims, there is no averment that it has been preserved separate from his other money; and having, as it is said, no ear-marks, it cannot be identified or followed. The bill is not filed to obtain the possession of the choses in action upon the ground of a conversion by the administrator in chief, or of a deposit merely with Edward Sims. But it is a bill to recover so much money from the estate of Edward Sims, upon the ground of his indebtedness to the estate of John C. Sims, in consideration of bills placed in his hands to be collected or used by him. It cannot be maintained upon the principle of account, nor is any discovery sought, the answer not even being required on oath. In short, if it can be maintained, then there is no demand created by a sale or transfer of an intestate's property which might not be collected by bill in equity. The bare fact that a purely legal demand is due to a trustee, and that the proceeds will be trust effects, is no ground for resorting to equity to collect it, when the legal remedy is adequate, specific, and perfect.—Code, § 602; 1 Story's Eq. § 76; Maury's Adm'r v. Mason's Adm'r, 8 Port. 217; 8 Ala. 744; 10 ib. 864; 16 ib. 423; 21 ib. 378; 8 Port. 339; 14 Ala. 514; 9 ib. 351.

Our conclusion is, that there is no error in the decree of the chancellor prejudicial to the complainant, and the decree is consequently affirmed.