# Miller *v.* Irby's Adm'r.

*Action on Promissory Note, by Payee's Administrator against Maker's Administrator.*

1. *Grant of administration on creditor's estate, to debtor; presumption of payment.*—When letters testamentary, or of administration, are granted to a debtor of the testator or intestate, the presumption of payment at once arises, and the debt is extinguished by operation of law, without regard to the duration of the administration, or the solvency of the debtor so appointed.

2. *Grant of administration on debtor's estate, to creditor; right of retainer, and extinguishment of debt.*—When letters testamentary, or of administration, on the estate of a deceased debtor, are granted to a creditor, he has a right to retain, out of the assets which may come into his hands, enough to pay his own debt, in preference to all others of equal degree; and if sufficient assets come to his hands, which might be legally applied in payment of such debts, his retainer for his own debt, and its consequent extinguishment, are conclusively presumed: no act on his part is necessary to effect it, nor can any act or laches on his part prevent it.

3. *Same ; extent of right of retainer.*—This right of retainer, with its legal consequences, is not limited to debts due to the personal representative individually, but also includes debts due to him as trustee, or as executor or administrator of another person.

4. *Same; as affected by statutory provisions.*—The common-law doctrine of retainer, as above stated, is not repealed by statute in this State, unless the insolvency of the estate of the deceased debtor intervenes; but it is modified by the changes effected by statute, as to the title, rights and duties of executors and administrators.

5. *Rights and powers of executor or administrator over personal assets.*—At common law, an executor, or administrator, was regarded as the absolute owner of all the personal assets, and, as an incident of ownership, had unlimited power to dispose of them; but, under our statutes, while his power to dispose of the *choses* in action is unlimited, he can not dispose of the visible, tangible personal property, except by an order of sale made by the proper Probate Court.

6. *Same ; right of retainer, and extinguishment of debt.*—In consequence of this statutory change in the rights and powers of an executor or administrator over the personal assets, a retainer and extinguishment of his debt will not be presumed from the mere possession of visible, tangible personal property, until after the lapse of a reasonable time, within which it might, by a sale under an order of the proper court, be converted into money, and applied in payment of debts; but, after the lapse of such reasonable time, the executor or administrator can claim no advantage from his own negligence and laches, and the presumption attaches, although he did not in fact obtain an order of sale.

7. *Liability of lands for debts; right of retainer, and extinguishment of debt.* The decedent's lands are charged by statute with the payment of his debts,

and may be sold for that purpose, under an order of the Probate Court, granted on the application of the executor or administrator, when the personal assets are insufficient; and the failure to exercise this statutory power, in a proper case, is a breach of duty on his part, from which result the same consequences, as to the retainer and presumed extinguishment of his debt, as from his failure to obtain an order for the sale of the personal property.

8. *Same; when retainer and extinguishment will be presumed.*—The failure of the executor or administrator to exercise these statutory powers, by obtaining orders of sale from the proper court, for such length of time as would render him chargeable at the suit of other creditors, is sufficient to raise the presumption of the extinguishment of his own debt.

APPEAL from the Circuit Court of Wilcox.

Tried before the Hon. JOHN K. HENRY.

This action was brought by Joseph N. Miller, as administrator *de bonis non* of the estate of Elizabeth E. Irby, deceased, against Lucy T. Irby, as the administratrix *de bonis non* of the estate of Christopher P. Irby, deceased; and was commenced on the 18th May, 1876. The action was founded on a promissory note for $6,000, executed by the defendant's intestate, payable to the plaintiff's intestate, or order, one day after date, with interest from date; which was dated, at the top, March 16th, and at the bottom January 1st, 1863; and on which was indorsed a credit, signed by *E. E. Irby*, in these words: "Received on the within note, from J. E. and W. Irby, administrators of est. C. P. Irby, five hundred dollars, Jan. 1, 1868."

The defendant pleaded, "in short by consent"—1st, *non assumpsit;* 2d, payment; 3d, the statute of limitations of six years; 4th, the insolvency of her intestate's estate; and, 5th, a special plea as follows: "And for a further plea, in short by consent, defendant says, *actio non*, &c., because she says that defendant's intestate died on the —— day of November, 1867, and one William Irby and J. E. Irby were duly appointed and qualified as his administrators, and entered upon the duties of their office; and that a large amount of assets came into their hands, belonging to the estate of C. P. Irby, more than sufficient to satisfy plaintiff's demand, and all other demands against his estate; that afterwards, about the year 1870, the said J. E. Irby died, and on the 10th day of November, 1870, Elizabeth Irby, the plaintiff's intestate, also died, and the said W. Irby was also appointed the administrator of her estate; and that while the said W. Irby was such administrator of both estates, the estate of said C. P. Irby was solvent, and said W. Irby had money assets in his hands belonging to the estate of C. P. Irby, adequate to the satisfaction of the demand of plaintiff's intestate, and which he, as her administrator, might lawfully have appropriated, or retained in extinguishment or payment of said de-

mand; that he continued to be the administrator of both estates, until his death, which occurred in November, 1875; the estate of C. P. Irby, from the time of W. Irby's appointment as administrator thereof, in 1867, until his death in 1875, being administered upon as a solvent estate, the same never having been declared insolvent. Wherefore, and by reason of the premises, the defendant says, that the plaintiff's claim was and is extinguished by retainer as aforesaid, and the right of action against this defendant·lost."

The fourth plea was afterwards withdrawn, by leave of the court. The plaintiff took issue on the first and second pleas, replied specially to the third, and demurred to the fifth, assigning the following as grounds of demurrer: 1. "Said plea does not allege that said W. Irby and J. E. Irby, after they were appointed administrators on the estate of C. P. Irby, deceased, applied any of the proceeds arising from said estate to the payment of plaintiff's demand." 2. "Said plea does not allege that said W. Irby, at any time while he was administrator upon the estates of said C. P. Irby and Elizabeth E. Irby, appropriated or retained any of the money assets of the estate of said C. P. Irby in extinguishment or payment of plaintiff's demand, or any part thereof." 3. "Said plea does not allege that said W. Irby, as the administrator of said Elizabeth E. Irby, retained or appropriated any money assets of the estate of C. P. Irby in his hands to pay and satisfy plaintiff's demand, or any part thereof." 4. "Said plea does not allege that plaintiff's demand has ever been paid or satisfied." 5. "Said plea is, in law, no answer to the complaint." 6. "Said plea nowhere alleges that the estate of defendant's intestate was insolvent." The court overruled the demurrer, and the plaintiff took issue on the fifth plea. The replication to the third plea alleged the grant of letters of administration on the two estates of C. P. Irby and Elizabeth E. Irby to said W. Irby, and that while he was the administrator of both estates—to-wit, from the 16th November, 1870, to the 10th May, 1875—and had possession of the note now sued on, there was no person who could be sued, and the statute of limitations was suspended. The court sustained a demurrer to this replication, and the plaintiff then took issue on the third plea also.

On the trial, as the bill of exceptions states, the plaintiff ·read in evidence the note sued on, and proved the indorsement on it of a partial payment, as above stated. "It was shown in evidence, also, by the plaintiff, that said Elizabeth E. Irby, the plaintiff's intestate, died in September, 1870, and letters of administration on her estate were·issued by the Probate Court of Wilcox county, on the 16th November,

1870, to Josiah E. Irby and William Irby; that said C. P. Irby died in November, 1867, and letters of administration upon his estate were issued by said Probate Court, on the 12th December, 1867, to said Josiah E. and William Irby; that said J. E. Irby died in November, 1870, and letters testamentary on his estate were granted by said Probate Court, on the 9th January, 1871, to Charles Irby as executor; that said William Irby died in May, 1875, and letters testamentary on his estate were issued on the 7th July, 1875, to his widow; that said J. E. Irby and W. Irby continued to be joint administrators on the estate of said Elizabeth E. Irby up to the time of the death of said J. E. Irby, and after his death said William Irby continued to be the surviving administrator on said estate up to the time of his death; that after the death of said William Irby, the plaintiff in this suit, said Joseph N. Miller, became the administrator, *de bonis non*, of the estate of said Elizabeth E. Irby; that said J. E. Irby and W. Irby, at the time they were appointed administrators on the estate of said Elizabeth E. Irby, were administrators of said C. P. Irby, and continued to be administrators on both of said estates up to the time of their respective deaths, as above stated. The defendant offered in evidence to the jury the appraisement of the estate of said C. P. Irby, returned to the Probate Court of Wilcox county, which showed the appraised value of said estate to be $13,941, besides personal property set apart to the widow amounting to $944.50." (This appraisement is copied into the bill of exceptions, and shows that the land was valued at $9,000, and that the personal property consisted of mules, cattle, plantation implements, &c., and a "lot of manufactured tobacco and merchandise," which was appraised at $300.) "This was all the evidence offered by the defendant. This being all the evidence, and there being no dispute about the facts of the case, the court charged the jury, that, if they believed the evidence, they must find for the defendant. The plaintiff excepted to this charge, and requested the court, in writing, to instruct the jury that, in order to make the facts set out in the fifth plea a defense to the complaint, it must appear that said William Irby had in his hands, as administrator of C. P. Irby's estate, moneys belonging to said estate, during the time he was the administrator of both said estates (namely, C. P. Irby's and Elizabeth E. Irby's), sufficient to pay the amount due on the note sued on, at some time while said William Irby was administrator upon both estates. The court refused this charge, and the plaintiff excepted."

The rulings of the court on the pleadings, the charge

[Miller v. Irby's Adm'r.]

given, and the refusal of the charge asked, are now assigned as error.

S. J. CUMMING, for appellant.—1. There is no pretense in this case that the debt has been paid in fact; and this court has said, that the presumption of payment, when the right to demand and the right to receive co-exist in the same person, "like all other presumptions, should be indulged in furtherance of. justice, and not to defeat it."—*Flinn v. Carter*, 59 Ala. 364. But the record does not show a state of facts which authorizes the presumption of payment, or extinguishment. No act of the plaintiff, or of his intestate, brought about the condition of facts shown by the pleadings. The appointment of an executor is the act of the party himself, while the appointment of an administrator is the act of the law, and does not involve the same consequences. The distinction between the two, as applied to the facts of this case, is an important one : the former appointment extinguishes the debt, while the latter only suspends it during the continuance of the double relation in the same person.—*Dorchester v. Webb*, Cro. Car. 372; *Needham's case*, 8 Co. Rep. 136; 3 Rob. Pr. 315.

2. The fifth plea averred that money assets, sufficient to pay the debt, came to the hands of the administrator, but the proof did not sustain the averment ; and the charge of the court, in effect, held the averment unnecessary, and the proof sufficient without that fact.—*Kimball v. Moody*, 27 Ala. Rep. 130.

3. The suspension of the right of action, while the same person holds the twofold relation of debtor and creditor, is a doctrine of the common law, and is entirely outside of the statutes of limitation, and unaffected by them.—Authorities first above cited.

COCHRAN & DAWSON, *contra*.—The statute of limitations was a complete defense to the action. Having commenced to run in the life-time of plaintiff's intestate, it continued to run until the bar was perfected.—Angell on Limitations, §§ 196-7 ; Broom's Legal Maxims, 609 ; *Lee v. Leachman*, 22 Ala. 455 ; 17 Ala. 291. The fact that the same person was the administrator of the debtor and creditor estates, did not suspend the running of the statute.—Authorities cited *supra ;* also, *Dudley v. Faulkner*, 49 Ala. 148 ; *Dorchester v. Webb*, Cro. Car. 372.

BRICKELL, C. J.—It is, in this court, a doctrine which ought to be regarded as familiar, and settled, that if the

(31)

[Miller v. Irby's Adm'r.]

debtor to a testator, or to an intestate, takes probate of the will, and qualifies as executor, or obtains a grant of administration, the debt is extinguished. Incapable of suing himself; divesting the contract of parties, an essential element to its origin and continuance; converting the debt, for all practical purposes, from a *chose* (or thing) in action, into a *chose* (or thing) in possession; by operation of law, the equivalent of a judgment and execution against himself, satisfaction of which it is his duty, legal and moral, to make; voluntarily taking upon himself the right and duty to demand and receive, and the existing obligation of paying and discharging resting upon him; it is the just, natural, logical, legal consequence of his voluntary act, that the debt, he is in his fiduciary capacity bound to demand and receive, and which he is under legal and moral obligation to pay and discharge, should be presumed conclusively paid and discharged.—*Hampton v. Shehan*, 7 Ala. 298; *Purdom v. Tipton*, 9 Ala. 914; *Whitlock v. Whitlock*, 25 Ala. 543; *Ragland v. Calhoun*, 36 Ala. 606; *Whitworth v. Oliver*, 39 Ala. 286; *Seawell v. Buckley*, 54 Ala. 592. The duration of his administration is not important. The instant the dual obligation, duty and capacity are created by his voluntary act, the presumption the law raises, of necessity obtains. In *Ragland v. Calhoun, supra,* it was said by this court; "Where a debt and credit—a right to demand, and an obligation to pay—coexist, even for a moment, in the same person, the debt is extinguished by the presumption of payment."

If William and J. E. Irby, at the time of their appointment as administrators of Elizabeth E. Irby, had been indebted to their intestate, under the operation of this principle, such indebtedness would have been extinguished. Without regard to their solvency, it would have been converted into assets—money in their possession, which they would have been under the duty of accounting for, and applying in the due course of administration.—*Simmons v. Gutheridge*, 13 Vesey, 264; *Windrop v. Bass*, 12 Mass. 199; *Bigelow v. Bigelow*, 4 Ohio, 138; *Prentice v. Dehon*, 10 Allen, 353. In *Simmons v. Gutheridge, supra,* it was said by the Lord Chancellor: "A debt due by the executor, to the estate of the testator, is assets, for the same plain reason upon which an executor who is a creditor may retain: that he cannot sue himself."

An executor does not, in this State, have the right of intermeddling, taking control of, and disposing of the assets, before probate of the will. It is only in a qualified sense that it may be said his authority is derived from the will. The probate of the will, and the grant of letters testamentary,

are indispensable to his rightful custody and control of the assets, and to his exercise of the powers the will may confer, or of his authority under the law. A grant of administration is, of course, the source of the duty and authority of an administrator. Letters testamentary, or letters of administration, clothe the executor, or the administrator, with the full legal title to all personal assets, and the right to pursue all legal remedies, which the testator or intestate, if living, could pursue for the reduction into possession of things lying in action.

*Retainer* is a remedy by mere operation of law, and is thus explained and defined by Blackstone : "If a person, indebted to another, makes his creditor, or debtee, his executor ; or, if such a creditor obtains letters of administration to his debtor; in these cases, the law gives him a remedy for his debt, by allowing him to *retain* so much as will pay himself, before any other creditors whose debts are of equal degree. This is a remedy by the mere act of the law, and grounded upon this reason : that the executor cannot, without an apparent absurdity, commence a suit against himself, as a representative of the deceased, to recover that which is due to him in his own private capacity; but, having the whole personal estate in his hands, so much as is sufficient to answer his own demand is, by operation of law, applied to that particular purpose."—3 Black. 18. To constitute a retainer, and, of consequence, a satisfaction and extinguishment of the debt, there was no act to be done by the executor or administrator—no discretion, or volition, to be exercised by him ; no election whether he would retain or not. The moment assets came to his possession, which, in the due course of administration, were and could be legally applied to the payment of the debt, the law, of its own force, made the application.—*Smith v. Watkins*, 8 Humph. 341.

At the common law, the executor, or administrator, was regarded as the absolute owner of the personal assets, and an unlimited power of disposition was an incident of the ownership. In *Woodward v. Lord Darsy* (Plowden, 185 a), the reason of the doctrine, that possession of assets operates an extinguishment of the debt, is said to be, "because, in judgment of law, he is satisfied before ; for, if the executor has as much goods in his hands as his own debt amounts to, the property of those goods is altered, and vested in himself—that is, he has them as his own proper goods, in satisfaction of his debt, and not as executor ; so that there is a transmutation of property by operation of law."

In *Wankford v. Wankford*, 1 Salk. 305, HOLT, C. J. said : "If the executor of the obligee is made executor to one of

the obligors, and has assets of the obligor, the debt is extinct, and the executor cannot sue the other obligor; for the having assets amounts to payment." So, in *Fryer v. Gildridge* (Hobart, 10 a), it was held, that if the same person be executor of the obligor and obligee, and there be sufficient assets of the obligor, the debt is presently satisfied, by way of retainer. The surer reason for the doctrine, and that which prevented a revival of the cause of action, it was said, was that, "when the obligor made the executrix of the obligee his executrix, and left assets, the debt was presently satisfied, by way of retainer, and, consequently, no new action can be had for the debt."

When there are assets in the possession of the personal representative, which are legally applicable to the payment of the debt, the doctrine of the common law seems well settled—the debt due him is paid. No laches in making the application, no indiscretion in parting with the assets, can avoid the result. The law works out the result, and it is not in the discretion of the personal representative to keep alive and continue the debt, or by any subsequent act to revive it. *Smith v. Watkins, supra; Chaffin v. House*, 4 Dev. (Law) 103; *Eeichelberger v. Morris*, 9 Watts, 42; *Thomas v. Thompson*, 2 Johns. 471. It is, however, the possession of assets which may be rightfully retained, that works the extinguishment of the debt.—*Hall v. Pratt*, 5 Ohio, 82. For, as was said in *Wankford v. Wankford, supra*, if the personal representative has no assets, "then he is not the person that ought to pay, though he is the person that is to receive."

The right of retainer, and its consequences, are not limited to debts due the personal representative individually. It extends to debts due him as trustee.—2 Williams Ex'rs, 938. And when the same person is the personal representative of both creditor and debtor, he may retain out of the assets of which he is possessed as the representative of the debtor, to satisfy the debt due him as representative of the creditor.—2 Williams Ex'rs, 943.; 1 Lomax on Ex'rs, 650; Toller on Ex'rs, 295; *Thompson v. Cooper*, 1 Call, 86; *Thomas v. Thompson*, 2 Johns. 471; *Hosack v. Rogers*, 6 Paige, 415; *Morrow v. Peyton*, 8 Leigh, 54.

Unless the insolvency of the estate of the testator, or intestate, who may be indebted, intervenes, we cannot see that, by our legislation, this doctrine of the common law is repealed. It is subject to modification, because of the changes of the common law, as to the title, rights, and duties of executors or administrators, which our statutes have wrought. While the personal representative has the same title to the personal assets that he had at common law, he has not the

unqualified power of disposition of such as are not choses in action. Visible, tangible, personal property, the subject of sale, he cannot dispose of otherwise than by sale made under an order of the Court of Probate, or the decree of some other court of competent jurisdiction ; and, with one or two exceptions, the sale must be at public outcry. Any private sale, or other disposition of such property, is void—a *devastavit.*—1 Brick. Dig. 932, §§ 266, 274-77; *Waring v. Lewis*, 53 Ala. 630. The mere possession of personal property, of that kind which he cannot apply to the payment of the debt due him, or of any other debt of the decedent, will not, of itself, extinguish, or work a presumption of payment of his debt. The reason of the rule ceases, and the right upon which it is founded does not exist. Being under the duty and obligation of paying, and also under the duty of receiving and demanding, it is only when he has assets which he can and ought to appropriate, that the law considers them applied, and the debt extinguished. Having no right to take and appropriate such assets—his only duty being to convert them into money for the payment of debts—the debt will not be presumed paid, until, from the lapse of time, the failure to convert them into money, and make the application, can justly be attributed to his negligence and misconduct. Of such negligence and misconduct he can claim no advantage—no absolution from the presumption which would attach, if he had been diligent.—*Kimball v. Moody*, 27 Ala. 130.

The whole property of a decedent (saving exemptions), real and personal, is charged with the payment of his debts, and must be sold for that purpose.—Code of 1876, § 2429. When the personal assets are insufficient for the payment of debts, the lands must be sold, and the proceeds of sale applied to their payment. It is only through an order of the Court of Probate, made upon the application of the personal representative, that a sale of the lands can be made. The personal representative has the power, and it is his duty, to rent the lands. These statutory provisions have not been construed as altering or preventing the descent of lands, or as intercepting the estate of the devisees. As at common law, the heir takes by descent, or the devisee by the devise, immediately on the death of the ancestor, or devisor. There is no chasm, in which the title is in abeyance. The personal representative has a statutory power, from which results a corresponding duty, that he may exercise; but he has no estate in the lands; and until the power is exercised, the heir or devisee is in as he was at common law. The lands are assets, only through an exercise of the power.—*Anderson v. McGowan*, 42 Ala. 280. Yet, a want of diligence in exer-

cising the power will involve the personal representative in responsibility. There is no discretion, no volition, committed to him. Subjecting the lands to the payment of debts, is a duty he is bound to perform; not distinguishable from the duty of reducing the personal property which is the subject of sale, to money, or the choses in action, to choses in possession. The power of renting, the power of sale, involves the duty; and for a loss resulting from neglect of this duty, he must be chargeable with the consequences, as he is with the injurious consequences resulting from the neglect of any other duty.—*Pearson v. Darrington*, 32 Ala. 227; *James v. Faulk*, 54 Ala. 184.

A debt due to him individually, or a debt due to him as trustee, or a debt due to him as the personal representative of another, would not be extinguished, *merely* because there were lands subject to its payment, which he could, by pursuing and exercising the statutory power, have reduced to money he must have appropriated to its payment. But, if there is negligence in the exercise of the power, rendering him liable to creditors, which would make him answerable for the debt, if a stranger had the authority, and was under the duty of demanding and receiving; can the presumption of payment and extinguishment be repelled? If it can, by his negligence, the debt is kept alive and continued, which he has not the power and capacity of doing by positive action; and is effected, if effected at all, only by his mere inaction and dereliction of duty. When the debt is due to him as trustee, or in the capacity of personal representative of the creditor of his testator or intestate, he would be chargeable with it, in favor of creditors, legatees, or next of kin, having the beneficial interest, and to whom he stands in the relation of trustee. The mere negligence of the personal representative, his folly or indiscretion, can not, nor can his immediate direct action, prevent the extinguishment of the debt, when there are assets which, by the fair and just performance of his duty, he could legally appropriate to the payment of the debt. If he paid the debt from his own means, there can be no doubt he would, from the proceeds of the sale of the land, be allowed to retain for his indemnity.—*Livingston v. Newkirk*, 3 Johns. Ch. 312. And if he is charged with the debt, because of his negligence, on the settlement of his administration of the estate of the creditor, he must be credited with it on a settlement of his administration of the debtor; and if he is not otherwise in default, for the balance due him on the latter settlement, the lands can be made liable.

The intestate of the appellant, the creditor of the intestate

[Miller v. Irby's Adm'r.]

of the appellee, died in September, 1870, and administration of her estate was, on the 16th November, 1870, committed to J. E. and William Irby, who were then, and had been since the 12th December, 1867, administrators of the estate of the intestate of the appellee. Property, real and personal, of the estate of the debtor, had come to their possession, which the law subjected to liability for the payment of the debts, and required should by sale be converted into money for that purpose. The value of this property, as appraised (and the appraisement is not controverted), exceeded the amount of the debt due the intestate of the appellant. What disposition has been made of this property, real or personal, is a fact in reference to which the record is silent. By sale, it may have been converted into money, which the law, by its own operation, would have appropriated, without the act or volition of the personal representative, forever extinguishing the demand and debt due the intestate of the appellee. True, J. E. Irby died soon after he became administrator of the estate of the appellant. But, for near three years he had been, with William, joint administrator of the estate of the debtor, having ample time and opportunity to reduce the assets, real and personal, to money, as it was his duty to do, and apply the money to the payment of debts. His death caused no interruption or vacancy in the administration of either estate. The survivor, William, was required to complete each administration.—Code of 1876, § 2413. And administration continued with him, until his death in May, 1875.

There was, then, a period of near five years, during which the administration of both estates, that of the creditor, and that of the debtor, was united in the same person. In the one capacity, it was his duty to demand and receive; in the other, it was his duty, so far as he had assets legally chargeable, to pay and satisfy. There was no deficiency of assets, and he was chargeable with the debt as money in his capacity of administrator of the estate of the creditor, and entitled to a credit for it when so charged, in his capacity of administrator of the debtor. Unless negligence, delinquency in the discharge of trusts, violation of duty, is presumed, the presumption of payment and extinguishment must be indulged. For all purposes, the debt is extinguished, and as to all persons. Changes in the administration can not revive it. As we have seen, in obedience to the settled doctrine of this court, if the debt had been due from the administrators individually, it would have been extinguished, eo instanti their appointment and qualification. The only distinction which can be made, when the debt is due from them in a represent-

ative capacity, depends upon the sufficiency of assets which they may receive, and which they can rightfully appropriate to its payment. Assets which can be applied, only after they have been converted into money, are not immediately appropriated to the extinguishment of the debt. But, when the period during which debts should have been paid, by the appropriation of the assets in the mode prescribed by law, has passed—when only gross negligence can have prevented the appropriation—when the representative stands chargeable with the debt as money,—it must be regarded as extinguished. It results, therefore, that the demand on which the suit is founded must be considered as extinguished.— *Kimball v. Moody*, 27 Ala. 130.

This conclusion compels an affirmance of the judgment, without the decision of the other question which has been discussed.